ALBANY,
August, 1805.

Liotard
v.
Graves.

Jean E. Liotard, Daniel W. Crommelin and Benjamin I. Crommelin *against* John Boonen Graves.

If a vessel be destined for a port which is suspected to be blockaded by the British, with directions to call at a particular place for the orders of the correspondent residing at the blockaded port and to whom she is unqualifiedly addressed, it is not a breach of duty in him to order the vessel to his own port ; and if she be taken in going there, and condemned for being guilty of a breach of blockade, the correspondent, if he appear to have acted in good faith, will not be liable. On an open account current interest is not allowable, unless by the custom of the trade or private agreement.

ASSUMPSIT to recover the balance of an account current. The amount of which was allowed to be just, provided the plaintiffs were entitled to compound interest on the annual rests, and had not made themselves liable for the value of a cargo consigned to them by the defendant and *George Barnewall*. To ascertain these points, the case which had been referred to arbitration by consent, now came up for the direction of the court on the points of law, all objections as to the right of setting off the misfeasance of the plaintiffs being waived.

From the voluminous correspondence spread before the court, and admitted as true, the following appeared to be the facts principally relied on.

Upon the 24th of *July*, 1798, the plaintiffs received a letter from the defendant and his then partner, Mr. *Vos*, dated the 14th of *June* preceding, which said, " We have " found a ship which shall be the bearer of 51 casks, &c. " It is the brig *Columbia*, which it is thought will sail the " 24th instant. The insurances will be made here, but " our underwriters would not do it, unless with the clause " that the war risks shall terminate with the dropping of the " anchor in the *Texel*. Therefore be cautious, and take " seasonable measures to cover us if there should be an open " rupture between you and your sister Republic and this " Republic, which in our opinion is unavoidable. Per- " haps the concerned will let her run into *Hamburgh* for " your orders, which give in every event to *Boué & Co.* " for the vessel and cargo are under our direction. Should " the one, or the other come to you, prepare yourselves to " expedite her with all dispatch, with 200 pipes of gin,

" (preferably from *Shimmel*) and such other goods as we " shall advise you. If we have any thing in your hands " be careful, in the name of heaven, to get it out of the " country before a confiscation of our property may take " place." In consequence of this letter, the plaintiffs on the 4th of *August*, wrote to *Boué & Co.* thus. " Messrs. " *Vos & Graves* of *New-York*, have shipped on board the " brig *Columbia*, 51 &c. intended for us. From the man- " ner in which these friends write us, it is possible the ves- " sel may come to you, but they signify to us positively, " that the captain must follow the orders we shall give you : " if, therefore, he arrive in your port, and the winds re- " main as at present, which circumstance naturally drives " the *English* off our coast, you will have the goodness im- " mediately to order him for this place, where he will enter " without hindrance, as has lately been the case with other " *American* vessels. But for the purpose of your orders " reaching the captain without delay, we request you to " transmit them to him at the mouth of the river, so that he " may receive them immediately." These instructions were punctually followed by *Boué & Co.* who, on the arrival of the *Columbia* at *Cruxhaven*, forwarded to *Weeks*, her mas- ter, the directions given by the plaintiffs. On receipt of them, *Weeks*, unwilling to comply with their contents, re- paired to *Hamburgh* (after forwarding a letter from the de- fendant to *Liotard & Co.*) to converse with *Boué & Co.* on the propriety of adhering to the orders, and *Boué & Co.* ad- vised waiting eight days, to afford an opportunity of com- municating with *Liotard & Co.* on the occasion. This *Weeks* refused to do, unless *Boué & Co.* would give him a written injunction to that effect. They declining to do this, he, in obedience to the directions transmitted by *Boué & Co.* sailed for *Amsterdam*, though he knew it to be block- aded, and was, on the 20th of *August*, taken by a *British* frigate, and sent into *Yarmouth*. On the very day of the capture, the plaintiffs received the letter, forwarded to them by *Weeks*, from *Cruxhaven*, dated the 30th of *June* antecedent, in which the defendant and his partner say, " the brig *Columbia*, *Benjamin Weeks*, master, with her " cargo, bound to your port, we have consigned to you ; " but from motives of precaution, and with the consent of

" the underwriters, she will touch at *Hamburgh* for your
" orders. Immediately on receiving the present, you are
" to ascertain, 1st. Whether your ports are in a state of
" blockade ? 2d. Whether *American* property will be
" safe in your port, and on shore, during the *Columbia's*
" stay with you. If you have the least apprehension res-
" pecting the latter, or if the former is actually the case,
" the *Columbia* is to unload and sell her cargo at *Hamburgh*,
" and your friends must dispatch her immediately for this
" place, with 100 pipes gin, &c. Confiding in your good
" judgment, to act for the best of our interest, we re-
" main," &c.

Upon the 21st of *August*, the plaintiffs wrote to *Boué*
*& Co.* the following letter. " We have, since our last,
" received the honor of your's, of the 17th instant, by
" which we learn, with much pleasure, that the ship *Co-*
" *lumbia, B. Weeks*, of *New-York*, is safe arrived in your
" river. We find, that having received your letter at
" *Cruxhaven*, he had left his vessel there, and proceeded
" in person to see you, for the purpose of receiving your
" orders. That, notwithstanding his disinclination for
" going into the *Texel*, on seeing your orders, he prepared
" to return to *Cruxhaven*, and try his luck. It would af-
" ford us much pleasure, if he proceeded to enter. How-
" ever, if we had received sooner the letter, last forward-
" ed us from Messrs. *Vos & Graves*, we should, con-
" sidering the modifications therein contained, of their
" former orders, have requested you to ascertain precise-
" ly, whether he could have proceeded through the *Wad-*
" *den.* If not, you might have procured him other pa-
" pers, and sent him to the port of *Delfziel*, taking care to
" give him a good pilot to carry him there. If, at the re-
" ceipt of this, he shall not have yet sailed, you may still
" try to prevail upon him, to adopt this measure, which
" will likewise be proper, in case he happens to be sent off,
" on attempting to enter our ports. But if you can no ways
" induce him to do so, then you may unload the cargo,
" and send it to us, through the *Wadden*, as soon as pos-
" sible, and we will avail ourselves of the same channel,
" and send him his return cargo, of which we will give

" you the particulars.  We thank you for the precision " with which you have executed our orders." Upon the 27th of *August*, the plaintiff received from the defendant and his partner, a letter, dated the 29th of the antecedent *June*, saying, " We have the pleasure to inclose a bill of lading " and invoice of the cargo of *brig Columbia, Benjamin* " *Weeks*, master, bound to your port, and on our account " consigned to you.  Please to dispose of the same to the best " advantage, and lose no time in reloading this vessel with " 150 pipes gin, &c.  As to the quantity, you may add or " diminish so as to make the invoice amount to about 50 " or 55,000 dollars, and whatever the sales of the outward " cargo will amount more, you will place to account, &c. " Should the forementioned goods not fill the brig, you " may augment the gin.  You will be careful to advise us " by different opportunities of the probable amount of the " return cargo, and the time when she is likely to sail, in " order to make insurances here.  We inclose a price cur- " rent for the information of you and your friends, which " will enable you to augment or diminish in the quantity of " those articles we order, according to the price it bears " with you, not losing sight of our intentions to have the " *Columbia* return with a full cargo, and respecting *French* " brandy we have to observe, that we would give it the pre- " ference to gin, if a pipe of the former was to cost 25 *per* " *cent* more than the latter.  There are 70 shooks of " casks, which formerly held gin ; if there is time suffi- " cient to have them coopered, we would rather have the " gin you send, started in them, as it keeps the spirit clear, " or you will have it in your power to dispose of them to " advantage.  Captain *Weeks* may be in want of some new " rigging and sails, with which please to supply him, but " let all needless expenses be avoided.  Relying on your " zeal for our interest we remain, &c."  Soon after this, the news of the capture of the *Columbia* having reached the plaintiffs, they entered into a long exculpatory correspon- dence with the defendant, who received from *Boué & Co.* a detail of the transactions, shewing that no blame could attach on them, as they did no more than communicate the orders they received.  The whole however terminated in

G g

the defendant's claiming from the plaintiffs on condemnation of the ship and cargo, their prime costs with charges, giving them credit for the sums received from the insurers in America, after deducting law expenses, and debiting them with the amount of the subscriptions of those underwriters who had failed. The right to sail for *Amsterdam*, though blockaded, had been acknowledged by the opinion of counsel taken on the subject, and communicated to the parties in the suit.

It was agreed that the grounds of the sentence of the *British* court of admiralty, as stated in the case of the *Columbia, Weeks* master, in 1 *Rob. Ad. Rep.* 154, should be used as evidence, in the same manner as a regular exemplification of the decree. If the plaintiffs were not liable for the value of the vessel, &c. then it was admitted the defendant would be entitled to half the amount of certain policies effected by *Liotard & Co.* in *Amsterdam*, and responsible for advances to *Weeks*, and other disbursements in *London*, while prosecuting the claim and appeal there; but, on the other hand, should they be answerable, it was conceded the policies would enure to their benefit, and the advances and disbursements be at their door.

*Riggs* for the plaintiffs contended, that they had, under the words of the defendant's letter of the 14th of *June*, a general discretionary power over the whole consignment. The going to *Hamburgh* was for the purpose of receiving directions whether vessel and cargo, or the one " or the other" should proceed to *Amsterdam*, and *Boué & Co.* were constituted by the defendant himself, his agent for carrying into effect the instructions *Liotard & Co.* might give. If therefore any inconvenience arose from the manner in which those instructions were executed, it was attributable to *Boué & Co.* the agents of the defendant, and the plaintiffs consequently not liable. To still further prove that it was the intention of the defendant to confer this general authority, his expressions in the next written letter of the 29th of *June* might, he said, be resorted to. The vessel is there described as " bound to" *Amsterdam*. The return cargo was to be purchased there, and even that, modified according to the judgment of the plaintiffs, " on whose *zeal* for their

" interest the defendant and his partner relied." In order to establish *Amsterdam* to be the port of ultimate destination, he read from the correspondence, part of a letter from *Barnewall*, dated 9th *July* 1798, saying, " In conjunction " with our common friends Messrs. *Vos & Graves*, I have " loaded the brig *Columbia, Weeks*, with a cargo of sugar, " &c. *for your address*, but from motives of precaution, " under existing circumstances, we have ordered the vessel " to touch at *Hamburgh* for your advice, and trust it will be " such as to encourage to proceed to your city." This, he argued, evinced the continuance of the intention to go into the *Texel*, and though it might be urged that the letter of *Barnewall* begs the plaintiffs " to follow the instructions" of the defendant, yet those contained in theirs of the 30th of *June* had not been received, when the orders to *Weeks* were given. It was fair, therefore, to refer to the words of *Barnewall*, as explanatory of the original views of the defendant, in conformity to which, the plaintiffs had directed the proceeding to *Amsterdam*. It was not till *after* they had done so, that the qualifying epistle from the defendant came to hand. Of course its contents could not affect the present question. Instantly, however, on its receipt the plaintiffs wrote to *Boué & Co.* giving fresh orders, which had in view the bringing to *Amsterdam* the cargo, without incurring the risk of capture, as, if that could be avoided, the sole interdiction of the defendant, was in case it would not, when there, be safe from confiscation. This active behaviour of the plaintiffs shewed their vigilant attention to the defendant's interest, and to charge an agent for mismanagement, there must be a violation of positive explicit orders, or a gross negligence. But in whatever light the second directions to *Boué & Co.* were viewed, was immaterial, as the vessel had sailed under those first given, and if they were the result of an honest *bona fide* conduct, *Liotard & Co.* were exonerated from all consequences. What did ensue might in fact have been prevented, had *Boué & Co.* the nominated agents of the defendant at *Hamburgh*, duly exerted themselves. They knew of the danger to which sailing for the *Texel* would expose, and yet refused to give the captain a written order to stay, only so long as was neces-

ALBANY,
August, 1805.

Liotard
v.
Graves.

sary to consult the plaintiffs. This took away from *Liotard & Co.* all power of averting the accident, which happened, and, as done by the agent of the defendant, to him, the loss must be attributed. If to the plaintiffs, they are answerable only for prime costs and charges, not for profits. On the point of interest, he said, that in accounts with *British* merchants, custom had sanctioned the practice here adopted ; it was the constant mode with them to charge interest on the amount of the disbursements of each year, and carry it into the balance they then struck, which sum, thus compounded, formed the principal, whereon interest was calculated for the ensuing year. Whether this was a usage to be proved and decided by the referees, or a matter of law arising from the fact of so much being due at a fixed time, was for the court to determine.

*Radcliff* and *Hoffman* argued contra, that as there was no agreement between the parties to shew interest should be allowed, nor usage of trade mentioned in the case, the court must decide the naked question, whether interest were recoverable on a simple account current? If held to be so in this case, it must be so in all, and to entitle to it, there need not be either a stated or settled, but merely a rendered account. As to the plaintiffs liability, independent of any orders they were reponsible for the amount of vessel and cargo, even under that discretionary power urged in their excuse. It appeared, from the facts detailed, that they were the general agents of the defendant. It was their duty then, to prudently manage the shipments made to them, without any exposition to unnecessary dangers. Common reason would prohibit forwarding a consignment to a blockaded port. It was no answer to say, that the one by the *Columbia* being addressed to them, was sent to a port so situated. That circumstance was not known to the defendant when the vessel sailed ; the plaintiffs however, were well acquainted with it, as appears from the letter of the 4th of *August*, to *Boué & Co.* and the report of the case of the *Columbia*, in 1. *Rob. Ad. Rep.* 154. To enable them to guard against all unknown dangers attending the entry of the *Texel*, was the reason why the brig was sent to *Humburgh* for orders. Nothing less than a positive direc-

tion could justify sending a ship, or her cargo, to a block-
aded port; for, the egress is as hazardous as the ingress.
The loading taken on board, after knowledge of the
blockade, would, by the law of nations, be confiscable.  1
*Rob.** 86. 150.† It was, therefore, particularly ordered
by the defendant, that if *Amsterdam* was blockaded, the * The *Frede-*
cargo should be sold at *Hamburgh*, and " the friends of ‡ *rick Molke.*
" the plaintiff dispatch her immediately." This was done to † *Vrow Judith.*
avoid the penalty on taking aboard a cargo from *Amsterdam.*
After receiving this prudent direction, what is the conduct
of the plaintiffs ?  They, as much as in them lies, violate
their orders, and write, requesting the captain to be per-
suaded to attempt reaching their port, by indirect means,
and if he cannot be induced to that, to have his cargo for-
warded to them, that they might sell and make the returns.
Thus encountering the very risk the defendant meant to
shun.  The inference is, that the possession of the cargo
of the *Columbia*, and the commissions of what she would
take back, actuated the plaintiffs, to measures so evidently,
in all aspects, opposed to their duty, and the interests of
their correspondence.  We contend, therefore, for their
liability, not only to the amount of vessel and cargo, but
for the profits which might have been made.

*Benson* in reply.  The manner in which this account is
made out, is in itself, a proof that such was the custom
between the plaintiffs and the defendant.  It is, therefore,
from the fact thus appearing, a matter of law, whether in-
terest be due or not.  Under the general discretionary au-
thority conferred on the plaintiffs, nothing less than a frau-
dulent act, or that *crassa negligentia*, which amounts to
fraud, would make them responsible.  This flows from the
nature of the bailment to the plaintiffs.  Besides, their or-
ders were only in aid of the design of the defendant, to
send the *Columbia* to a blockaded port.  It cannot be ar-
gued, that it was unlawful for *Liotard & Co.* to direct the
cargo, or the vessel, to go to *Amsterdam*, because the case
of *Vos & Graves* v. *The United In. Comp.*‡ has decided ‡ 1 *Caines' Ca.*
that, under our treaty with *Great Britain*, the defendant *in Error*, vii.
himself was warranted in sending the *Columbia* for that
port, as, till warned not to enter, she had a right to make

ALBANY,
August, 1805.

Liotard
v.
Graves.

* 2 N. Y. T.
R. 1.

the attempt. If the act was legal in the principle, it certainly was so in the agent. It matters little with us, therefore, what is the *English* law on the subject of an *American's* right to sail to a blockaded port ; and, since the decision of *Williams* v. *Smith*,* if the obsidiary fleet be blown off, the neuter has a right to enter. The orders, therefore, of the plaintiffs were strictly lawful, and though an accident has occurred, yet as it was in endeavouring to comply with directions, the plaintiffs were authorized to give, and did *bona fide* communicate, no liability can attach.

SPENCER, J. The questions submitted by the case are, 1st. Whether the allowance of interest is a question of law, and if so, whether the plaintiffs are entitled to it. 2d ? Whether the defendant is liable for certain monies paid by the plaintiffs in *London*, to *B. Weeks*, master of the brig *Columbia* ? 3d. Whether the defendant is entitled to one half of the amount of insurance, made by the plaintiffs on the cargo of the brig *Columbia*, or to what part thereof ? 4th. Whether the plaintiffs are responsible for their default or mismanagement, as agents or consignees, in relation to the capture and condemnation of the said brig and cargo, so far as respects the one half thereof, owned by the defendant ?

The question of interest is a question of law, depending on facts. In the present case, the facts are presented in such a manner, that, without applying the law to them, I shall content myself by laying down principles, and leaving the arbitrators to make the application. For goods sold and delivered, unless there be evidence of an agreement to pay interest, none is recoverable, until a liquidation of the account take place. If an account be transmitted by a creditor, and acquiesced in, or assented to by his debtor, it becomes thereby liquidated, and interest is allowable. On money advanced, interest is legally demandable. By the usage of a particular trade, interest may be allowed ; and if it is customary to allow it to *Amsterdam* merchants after a specific time, and that custom is generally understood, it may be due in the present case. These observations may enable the arbitrators, on examining the facts, to decide the question of interest,

The second question, I understand to be substantially this. Whether the charges in *England*, in prosecuting the claim for a restitution of the brig and her cargo, are to fall on the plaintiffs, or the defendants? This is dependant on the fourth question. For, if the plaintiffs have rendered themselves liable for the capture, then they ought to bear the expences as an *item* of damage ; otherwise, not.

The third question too, rests on the same result. The goods were acknowledgedly insured by the plaintiffs, for the concerned in that brig. If the plaintiffs are not answerable to the defendant for the whole amount of the property, on the ground of mismanagement, then the defendant becomes entitled to the one half of what has been recovered from the underwriters in *Holland*, with an allowance to the plaintiffs, for their commissions.

The fourth point embraces the great object of the controversy.

If the position laid down by Sir *William Scott*, in condemning this vessel and her cargo, were to be regarded as law here, I should consider the plaintiffs liable for the injury sustained by the defendant, because they directed ·the captain, who was consigned to them, and bound to obey their orders, to do an act imminently endangering the property intrusted to their management, and this, obviously contrary to the defendant's intention, manifested by his sending the vessel to *Hamburgh*, a neutral port, to await orders, and be governed by circumstances, rather than to *Amsterdam*, a port of one of the belligerents. There would have existed a want of skill, or actual infidelity to the interests of the principal, amounting to gross negligence or fraud, in either of which cases, a liability to the constituent would be created.

The judge I have mentioned, considered, 1 *Rob. Ad. Rep.* 156, that the sailing from *Cuxhaven*, with an intention of evading the blockade of the *Texel*, was a beginning to execute that intention, therefore an overt act constituting the offence, and that, from that moment " the blockade was fraudulently invaded."

The court for the correction of errors, in a question between the now defendant, and *Graves*, and the *United Insu-*

ALBANY,
August, 1805.

Liotard
v.
Graves.

*rance Company*, held the Insurers liable for the capture and condemnation of the same vessel, and decided, that the brig *Columbia*, having only an intention of entering the *Texel* if the investing squadron should be blown off, and having been captured before she arrived at the mouth of the river, and had attempted to enter, was not liable to condemnation; on the principle, that intention is not a ground of judicial animadversion, and that nothing short of an actual attempt would warrant a forfeiture.

I hold myself bound by the latter decision; it then necessarily follows, that the sailing of the *Columbia*, from *Cruxhaven*, with an intention to enter the *Texel*, was an innocent act, and if it was, the plaintiffs cannot be considered as responsible for any injury in the prosecution of such act. I cannot proceed on any speculative reasoning, as to what might have happened, in consequence of the plaintiffs' orders, had not the vessel been captured as she was. The *gravamen* is this seizure and condemnation, which has been pronounced in the last resort, as illegal and unjust. It manifestly appears by the case, that the plaintiffs acted in good faith, and under an idea that the *Columbia* having sailed before the blockade was known, was entitled to notice, and to be turned away. They also conceived, that if the investing squadron was blown off, she might lawfully enter; they cannot, therefore, on any principle, be liable to this claim.

THOMPSON, J. This cause involving the examination of long accounts between the parties, has been referred to referees, but as the result, with respect to some of the *items*, depends on questions of law, those questions are submitted to the determination of this court, that the examination of the referees may be regulated thereby.

The principal question relates to the conduct of the plaintiffs as agents for the defendant, respecting the brig *Columbia* and her cargo, of which the defendant is to be considered as owner.

Under the circumstances of the case, it is made a question, whether the consignees acted with that reasonable caution and prudence, which they ought to have done. It

is not pretended but that they knew of the blockade, and they might have been chargeable with gross abuse of their trust, if there had not been reasonable grounds to calculate, that the vessel might have entered, notwithstanding the blockade. They knew *that* had been the case with respect to other *American* vessels, and from the state of the winds, they expected, the blockading squadron might be drove off the coast, so that no blockade in fact would exist, so as to expose the vessel to capture and condemnation, within the rules adopted by our courts, until she had proceeded so far as to find an actual existing blockade. The consignees knew the vessel was bound to *Amsterdam*, the cargo intended for that place, and insurance made to that port. Under such circumstances, I cannot think the plaintiffs chargeable with gross inattention to the interest of their principals.

The subsequent orders contained in the letter of the 30th of *June*, cannot affect the question, not having been received *at Amsterdam*, until the 20th of *August*, which was the very day the brig was captured, as appears by *Robinson's* report of the case. Had this letter arrived in due season, it would have been the duty of the agents, at all events to have stopped the vessel, and unloaded her at *Hamburgh.* The orders are positive to unload there, if *Amsterdam* should be blockaded. This letter also contains the first information the plaintiffs had, that permission was given, by the policy, to touch at *Hamburgh.* The next day after the receipt of this letter, containing, what they deem, a modification of their orders, they wrote *Boué & Co.* countermanding those previously given, and directing them not to send the brig to *Amsterdam*, unless she could come through the *Wadden*, where, it appears, she would have been out of the reach of any *British* armed vessels. But this letter arrived too late, for captain *Weeks* had actually sailed, and was captured before this time. The plaintiffs are not chargeable with want of due diligence, in countermanding their first orders given to *Boué & Co.* It was done the very next day, after receiving instructions from their principals, which made it proper so to do. The letter of the 30th of *June*, then, and all subsequent correspondence, ought to be put out of view, and the whole merits

ALBANY,
August, 1805.

Liotard
v.
Graves.

H h

of the question will depend on the instructions contained in the letter of the 3d of *June*, and the orders given by the plaintiffs to *Boué & Co.* in consequence thereof, on the 4th of *August*. I consider the plaintiffs, therefore, as agents vested with general and discretionary powers, and, as such, cannot be said to have violated their orders. If made liable at all, it must be either for gross negligence, or fraudulent conduct. I see nothing whereby to charge them on the latter ground; and if they, rather unadvisedly ordered the vessel to *Amsterdam*, when it was blockaded, it would not, under all the circumstances, be deemed any thing worse than an error of judgment.

I think, therefore, that the plaintiffs are not chargeable with the loss of the vessel and cargo; and they acting, in the capacity of agents, in the advances made to captain *Weeks*, the defendant is bound to reimburse them. There can be no doubt, but that the defendant is entitled to the benefit of the insurance made in *Amsterdam*, upon the cargo in question. With respect to interest on the plaintiffs' account, it appears to me, they had a right to charge it on the money advanced. The account cannot be considered as settled, and on that ground carrying interest. It is merely an account current between the parties, and unless some usage, or practice is shewn, to warrant the allowance, I should think interest ought not to be calculated, except on the money advanced.

LIVINGSTON, J. This is a case of importance, and has been argued with much ability and zeal. The question of greatest difficulty, is that, which regards the plaintiffs' liability. An agent, who acts under positive orders, must, at his peril, pursue them literally. It is not less evident, that a factor, who is not particularly instructed, but in whom a discretion is vested, is entitled to protection, so long as he acts according to the best of his judgment, and is innocent of fraud and gross abuse of the confidence placed in him. If a loss ensue from mistake or error of judgment, where there is no *lata culpa* or *crassa negligentia*, his principal, and not he must bear it : were it otherwise, no prudent man would accept a trust of the kind ; and a merchant, however distant from the scene of action, would

be obliged, at a great hazard, to give positive directions, instead of reposing on the intelligence of a correspondent, who might take advantage of circumstances, which were neither contemplated nor foreseen by himself. The same rule must govern where language, equivocal or doubtful be ·used ; for nothing can be more absurd or unjust than that a man, whom an accident befalls, in consequence of a loose or ambiguous phraseology, should resort to an agent for indemnification, when by a moderate portion of care, he might have rendered himself intelligible, and prevented a loss.

The defendant's letter of the 14th of *June*, 1798; ·provided only against an " open rupture between *Holland,* " *France,* and the *United States.*" · It did not embrace the case of a blockade, and was inexplicit or silent on every other point. In what respect then, were the plaintiffs' orders of the 4th of *August*, which arose out of this letter, and which, as is alledged, occasioned the disaster, a violation of any instruction which it contained ? No other meaning can be extracted from it, than· that the plaintiffs, if the vessel touched at *Hamburgh*, were to order her to *Amsterdam, if peace continued · between the Batavian republic and this country.* · If they had a right to direct her to stop at *Hamburgh*, in case of ‑ blockade, which may admit of doubt, they were sole judges, being uninstructed on this point, of the degree of danger which would render such measure proper. If they had undertaken to arrest the *Columbia* in her voyage, but in the event of a war, and a loss had followed, might they not have been called on for their authority, and found it difficult to defend their conduct ? But admitting, that, as general agents, if such they were, they had this right, they were not bound to exert it, unless in their opinion, the defendant's interest would be promoted by the adventure's terminating at *Hamburgh*. The reason they assign for a different conduct, would probably have influenced the defendant himself. They were encouraged to this step, because several other *American* vessels had arrived, and they might have supposed, as it appears they did by one of their letters to *Boué* & *Co.* that the worst that could happen from the blockade, was the *Columbia's* being sent

ALBANY,
August, 1805.

Liotard
v.
Graves.

away for an attempt to enter, and a small delay in her return to *Hamburgh*. That the *British* had no right to capture, without a previous warning, has been settled by our court for the correction of errors, in an action against the assurers of this very vessel, who contended that their responsibility was at an end, by *this* breach of blockade. Sir *William Scott* had condemned the *Columbia*, although she had not been turned away, deeming such ceremony unnecessary, where the merchant or his agents had acquired notice in fact, *even during the voyage*, of an existing blockade. On the ground however of this judgment, (which was not regarded as conclusive between the assured and the assurer) being contrary to treaty, it was determined, that sailing for a blockaded port, with knowledge of the fact, was no waiver of the right of being notified, and *once* turned away. When at the bar, I had occasion to examine the grounds of this sentence, and although, no one holds in higher estimation, the talents and integrity of the eminent character who pronounced it: my conviction has ever been, that it was not warranted by the treaty of *London*, or the law of nations. Admitting the blockade known in *America*, it did not follow, that sailing for *Amsterdam*, indicated an intention to break it. It might be raised before the *Columbia* arrived in the *Texel*, or if not, the master might be instructed to go elsewhere. If such intention existed, why shall mere intent in this case, more than in any other, amount, as Sir *William* terms it, " to an " overt act constituting the offence ?" As well might a design to poison, be called an overt act of murder. But when it be recollected, that the owners were ignorant of the blockade, and their intentions of course innocent, this confiscation cannot but be viewed as a very heavy penalty for the mistake of a master or agent. Nor did the notice received in the *Elbe*, justify the proceeding ; for, the investment of *Amsterdam* not being known in *New-York*, when the vessel sailed, it was a case within the letter of the treaty. She might proceed, notwithstanding any intelligence obtained on the way, which might be incorrect, until warned away by one of the blockading squadron, and

nothing short of a second attempt, should have been deem-
ed a violation of the belligerent rights.

· As this judgment is made part of the case, with a view
to the plaintiffs' prejudice, these remarks on it will not be
thought impertinent, especially if they assist in forming a
proper estimate of the risk of a voyage from *Hamburgh* to
*Amsterdam*, or tend to shew that, in giving the orders in
question, they did nothing illegal or which justly exposed
the property to forfeiture. This must have been their un-
derstanding at the time, and probably the same opinion
prevailed in *Amsterdam*, or insurance would not have been
effected there at so moderate a premium. This ground
too, was taken by the defendant and his partners in the ac-
tions which were brought to recover the insurance on this
voyage, and they ought not now to be permitted to aban-
don it.

. Some stress was laid on the letter of the 30th *June*,
1798, which contains a direction to unload at *Hamburgh*,
" if a blockade actually existed"—but not being received,
until after all the mischief had happened, by what rule of
right is the plaintiffs' conduct to be judged by it ? Does it
not rather prove, that the owners of the *Columbia*, thought a
positive instruction on this point necessary, to justify the
plaintiffs in adopting this measure ?

But admitting a discretion in the plaintiffs, it is contend-
ed they acted wantonly, or with gross inattention to the
owners' interest, and that they had nothing in view but
their own advantage, being determined, at all hazards, to
obtain possession of the property. In support of this alle-
gation we are referred to their letter of the 25th *August*, to
*Boué* & *Co.* directing the cargo to be sent on through the
*Wadden*, contrary to their instructions, which were to sell
it at *Hamburgh*. If in consequence of this letter, a loss
had occurred, the plaintiffs would have been responsible,
but that not being the case, and as it might, for ought that
appears, have been greatly for the defendant's benefit; to
have the cargo sent on to *Amsterdam* by the interior navi-
gation, and one in return provided there (for we are in the
dark as to the *then* state of the markets at *Amsterdam* and
*Hamburgh*) we cannot say this step was not intended for

the defendant's benefit. It can hardly be supposed that a respectable house, for the paltry consideration of a commission, would sacrifice, or expose to unnecessary perils the property of their principals. Nor will it be charitable from an act, doubtful at most, to draw in question the integrity of their conduct prior to this time, particularly, when we perceive with what alacrity their orders were countermanded on receipt of the second letter. It was also stated, as further evidence of the plaintiffs' misconduct, that if the *Columbia* had succeeded in reaching *Amsterdam*, she would have been good prize if captured in coming out. But if she had a right to go in, as I think she had, unless warned away, and she received no such intimation from the surrounding squadron, it is by no means clear, that the *British* could rightfully have prevented her egress. Being then of opinion, that no liability has been incurred, it is unnecessary to settle a rule of damage, or to enquire how far the subsequent conduct of the defendant and his partners, amounted to a confirmation of the acts of their agents. On the latter point, however, it may be remarked, that they did not discover, that early disapprobation which agents, who have mistaken or exceeded their instructions, have a right to expect. A merchant should not be permitted to conceal his dissatisfaction, and thus retain the power of taking advantage of events. On the 27th *October*, 1798, when the blockade of the Texel, as well as the order now complained of were known, Mr. *Barnewall*, in a letter addressed to the plaintiffs, expresses a " hope " that they have received the cargo," without intimating the smallest dissatisfaction at their conduct, or any apprehensions on account of the blockade. It is not until six months after this last letter, and as many as ten after the capture, and not until the *Columbia's* fate were known, that the concern complain of the plaintiffs, without even then giving any explicit intimation that they will be regarded as answerable for consequences. On the same day, they write at some length to their correspondent in *London*, and although they review the conduct of all the parties in this transaction, they throw no blame on the plaintiffs; but, on the contrary, attribute the misfortune to the captain, who refused to wait eight days in

ALBANY,
August, 1807.

Ludlow,
v.
Graves.

the *Elbe*, " within which time," say they, " positive instruc-
" tions arrived from *Holland to unload at Hamburgh*."
They also approve of the appeal, and beg to be made ac-
quainted with the progress and probable amount of charges.
The underwriters too are sued on their own account, and
without consultation with the plaintiffs. From this conduct,
the inference is fair, that if the parties did not approve of
the plaintiffs' proceedings, they did not think themselves
entitled to look to them for an indemnity. They would
otherwise have preferred an immediate recourse of that
kind, to a tedious and expensive litigation in the *British* ad-
miralty, or to the very uncertain issue of a controversy with
the underwriters here.

With respect to the question of interest. If there be
no special agreement between the parties, or usage of trade
between *Amsterdam* and *New-York* to the contrary, it
ought to be allowed on all monies advanced from their res-
pective payments, and on the goods supplied, after such
time as is conformable to the course of trade between
the two countries. One account was rendered as early as
in 1797, in which interest is calculated, and yet no objec-
tion was made to it in the succeeding correspondence,
from which I conclude, such charge consisted with the un-
derstanding of the parties.

Upon the whole, my opinion is, that under the letter of
the 14th of *June*, which was silent as to the case of block-
ade, the plaintiffs had a discretion to act in such an event,
as in their judgment they thought best for their employers'
interest. That if they acted fairly, and under a sincere
belief, as I think they did, for there is no evidence to the
contrary, that the *Columbia* would probably reach *Amsterdam*
in safety, or only be sent away and return to *Hamburgh*,
they are not answerable for her *unjust* condemnation, nor
for any damages in consequence of their conduct in the
premises—that they are entitled to interest as charged, un-
less it shall appear to the arbitrators, to be contrary to agree-
ment or to the known and established custom of merchants
in *Amsterdam*, trading with this country. That the mo-
nies advanced to Capt. *Weeks*, not appearing to be extrava-
gant, or to have been expended for his own use, form a
proper item against the defendant, who in turn is entitled

ALBANY,
August, 1805.

Liotard,
v.
Graves.

to a credit for one half of what has been received by the plaintiffs from the insurance effected in *Amsterdam* on the cargo of the *Columbia*, with interest thereon from the time of payment.

KENT, C. J. The principal question of law arising in this case is, whether the plaintiffs are responsible in the character of agents or consignees, for default or mismanagement in ordering the Brig *Columbia*, and her cargo from *Hamburgh* to *Amsterdam*?

It is unnecessary to examine the volume of correspondence between the parties, annexed to the case, because the whole question turns upon the orders of the 4th *August*, as founded upon the instructions of the 14th of *June*. No others had reached the plaintiffs on the 4th of *August*. The subsequent letters are no further material, than as an exposition of the original intentions of the parties. From them it appears beyond all doubt, that *Amsterdam* was the ultimate and original port of destination, and that touching at *Hamburgh* was only intended as a precaution, to await the advice of the plaintiffs. As they were left in the first instance, and until after the 4th of *August*, with unqualified, absolute discretion, they were only bound to act with *good faith*, and with *diligence*, as they should judge most conducive to the interests and expectations of their principals. An agent with general discretion is no further holden. 1

* 8vo. E.

*Beawes* * 44. *Jones on Bailment*, 75. 2 *L. Ray*, 918. Under the circumstances attending the order of the 4th of *August*, I do not consider it an abuse of trust, for which the plaintiffs are responsible. They knew the destination of the vessel and cargo, and that, in every event, they were to give orders to *Boué* & *Co*. They assert, and we are to take it to be the fact, that *American* vessels had lately entered without hindrance, and we perceive from the case, that the opinions of counsel here, were that the vessel had a right to make the attempt, and could only be turned away, under our treaty with *Britain*, for making the first attempt. The plaintiffs gave their orders with a qualification, that " if the winds " should continue variable, which naturally drove the Eng- " lish off the coast," they may not have acted with great wisdom or prudence ; but if they gave their orders with

honesty, and as they thought, for the interest of their principals, they are excused, and the defendant has only to blame himself for giving an indefinite discretion.

The determination of this question puts an end to two other points that were raised upon the argument. The insurance effected by the plaintiffs in *Holland*, was for the account of *Vos* & *Graves;* the defendant is entitled as of course to credit for one half of the amount of that insurance, and is liable to the charges for monies paid to Captain *Weeks* in *London.*

The only remaining question is, as to the legality of the charge of interest in the plaintiffs' account. The account exhibited is not an account liquidated, but a naked account current, and interest is allowable only on such *items* in it, as are made for monies advanced, except the usage of the trade has provided some particular rules on the subject, and which are to be submitted to the referees to determine.

Tompkins, J. I concur in the result of the opinions given, and to detail my own reasons, would be only to repeat what my brethren have said.