New trial granted.

LEVERICK <em>against</em> MEIGS & REED.

ASSUMPSIT ; tried before his Honor (the late) Ch. Justice SPENCER, at the *New-York* sittings, in *June*, 1821.

The action was to recover the amount of two several bills of exchange, each drawn by the house of *Rea* and *Butler*, in *Savannah*, upon *Thomas C. Butler*, of *New-York*, at 60 days sight; the first dated the 20*th January* 1819, for $743,28, the other dated the 5*th February*, in the same year, for $1384, 78, both payable to the plaintiff. They were remitted to the plaintiff by the defendants, on account of the proceeds of goods consigned to the defendants by the plain-

ALBANY,<br>
Feb. 1824.<br>
<br>
LEVERICK<br>
v.<br>
MEIGS.<br>

The general duty of a factor considered. A factor under a general power, will not be responsible for losses, if he appear to have acted to the best of his abilities, without breach of orders, gross

ALBANY,
Feb. 1824.

LEVERICK
v.
MEIGS.

negligence, or fraud.

If there be a loss by his giving credit on a sale, or making remittance, &c. he is responsible, unless it appear that he used ordinary diligence to ascertain the discredit or insolvency of the party whose failure occasioned the loss.

tiff, for sale on his account; and which they sold at a credit, as his factors, under a commission to guaranty the sales.

At the trial, proof of the nature of the contract and the liability of the defendants, depended, in part, upon various letters which passed between the parties, under dates from the 12th Dec. 1818, to March 1, 1819, and which were given in evidence. Under dates of the 12th and 24th, Dec. 1818, and the 2d Jan. 1819, the defendants acknowledged the receipt and sale of goods; and in the letter of the 24th, they added, " P. S. The paper received for butter and gin is undoubted; and we are willing, in all cases, to add our guaranty to our sales for the usual commission for so doing." Under date of January 2d, they wrote, " Bills on your place are very scarce, and none at less than 60 days sight, which are now selling for cash, at 1 1-2 ct. discount." Under date of Jan. 20th, 1819, they sent an account of sales on credit, and wrote thus : " Enclosed is Rea & Butler's draft on Thomas C. Butler, jun.

When directed to remit, however, he need not, in general, inquire into the credit of the drawee.

But if circumstances of suspicion appear against the drawers, sufficient to put a man of ordinary prudence on his guard, he will be accountable.

If the bill be drawn by a partnership, he must shew the good credit of all the members of the firm.

A factor need not obey instructions to remit, unless good bills can be obtained.

When a factor's powers are limited and specific, he must, in general, pursue them literally.

And where a factor at Savannah was directed by his principal in New York to remit bills at short sight on some good house in New-York; held, that he was bound at his peril to see that the drawee was in good credit.

The nature and effect of a commission del credere considered.

It is, where a factor, for a premium beyond the usual commission for the sale, becomes bound to pay the price at all events.

The factor may be debited by the vendor, as the vendee of the goods.

As between the factor and the actual vendee, the former is considered the sole owner of the goods.

Rights of set off between these two considered.

The original vendor may, before payment, resort to the actual vendee as the collateral security of the factor ; and may stop the payment to the latter.

Factor not liable to pay till the purchase money becomes due to him ;

But when due, the principal may call on him, without first looking to the actual vendee ; so that his engagement is a guaranty of the sale.

The only difference between an ordinary factor and a factor under a commission del credere arises from this guaranty.

But this guaranty of the sale or commission del credere does not imply a guaranty of the remittance :

This obligation would apply only to a real purchaser :

Whereas the factor, under the commission, still retains his character of ordinary factor as to the remittance.

A guaranty of the remittance depends on the principle that a bill or note does not discharge a precedent debt unless it prove good.

of your place, for $743,28, to your debit at par, having been received for your account, in exchange for paper received for gin and butter sold for your account. *We have conclu-ded to guarantee our sales for you at 1¼ per cent. and have this day debited you with our guarantee on amount sold F. &c.*" Under date of the *5th Feb.* 1819, they stated a balance to the amount of the bill, of $1384,74, which they mentioned as being enclosed, and added, " which is remit-ted on your account and risk."

It was admitted by the defendants, that the two bills were regularly protested for non-payment, and sent to them at *Savannah*, to be there put in suit against the drawers, which was done in the name of the plaintiff, without prejudice to the rights of the respective parties to this suit.

The plaintiff, under date of *Jan. 9th*, 1819, had written thus : " *I should wish you to guarantee the sales of my dif-ferent shipments, which are made at a credit, at the usual commission.* The charge for guaranteeing of Messrs. *H. & W.* is 1¼ per cent. which is the customary charge. *· I will thank you to negociate the paper received for gin and but-ter, in such a way that I may receive the funds here, either in bills you have mentioned, or a draft at short sight, on some good house, in time to meet my note given for those ar-ticles at ·90 days.*" Under date of the *27th Jan.* 1819, he acknowledged the receipt of the defendant's letters of the *2d Jan.*, stated a corrected balance at $756,17, and ad-ded, " for which I will thank you to procure *a good* draft on this place at as *short sight* as possible. If no better can be done, send a 60 day bill, which I suppose can be had at a discount." Under date of the *30th Jan.* 1819, the plaintiff acknowledged the receipt of the bill of $743,28, and added, " the draft is duly honored, but I am sorry to say it, cannot be discounted unless paying more than bank dis-count. Mr. *B's* paper will not go in bank. They are rath-er shy of him : his business appears to be pretty well ex-tended. I think the draft will be paid when due. The above in confidence." Under date of *Feb. 3d*, 1819, the plaintiff corrected the balance of other sales by the de-fendants, and added, " which please remit as I before re-

quested." Under several subsequent dates the plaintiff wrote in relation to the measures on foot to secure or obtain payment of the bills from the drawers and acceptor, which had failed, they having finally proved insolvent.

It appeared that *T. C. Butler*, the acceptor, failed in *February*, 1819 ; that the firm of *Rea* & *Butler*, at *Savannah*, consisted of *James Rea*, of *Savannah*, and *Thomas C. Butler*, of *New-York* ; that the former had, for several years before, carried on trade at *Savannah* under this firm, and the latter at a separate house in *New-York.*

Several witnesses were examined both for the plaintiff and defendant, as to the credit of *Rea* & *Butler*, before and at the time of the purchase and remittance of the bills by the defendants. It is unnecessary to state their testimony particularly, as it is, so far as it can be material, noticed in the opinions of the Judges. The result was, that the house of *Rea* & *Butler* were in good credit at *Savannah* ; whereas, *Thomas C. Butler* was, for some time before the bills were drawn, in bad credit at *New-York*, and his failure immediately produced that of *Rea* & *Butler* at *Savannah.* The facts which relate to the negligence of the defendants are also sufficiently stated in the opinions of the Judges.

A verdict was taken for the plaintiff for $2500, subject to the opinion of the Court upon a case, with liberty to either party to turn it into a special verdict.

The cause was argued at the last *May* term, by (the late) Mr. *J. Wells*, for the plaintiff, and *R.* & *T. A. Emmet*, for the defendants.

*J. Wells*, for the plaintiff.

1. The defendants, as factors, have rendered themselves personally liable for the proceeds of the plaintiff's goods, by their negligence in taking the bills in which they attempted to make the remittances.

2. They are personally liable for the proceeds, by virtue of the *del credere* contract.

The bills were defective in the essential properties of a bill of exchange. There should have been three parties at

least. The phrase, " pay in a bill of exchange," always contemplates this number of parties with a view to the security ; that security is always less upon a bill having but two parties ; indeed, this bill by *Rea & Butler*, drawn upon *Butler*, is but little more than if *Rea* had drawn the bill upon himself ; for *Butler* was the support of the house at *Savannah*, and when he was gone the whole concern went with him. In a bill, the holder relies both upon drawer and drawee, who ought to be distinct and responsible persons. Here the acceptance of the bill furnished no additional security ; for the acceptor was already bound as drawer. He had no option, which is many times of the greatest importance. Had he not been already bound, the bill would have been immediately returned upon the drawers, *R. & B.* and every effort made to have it taken up ; and a protest for non-acceptance might have been the means of saving the debt. *Butler* gained 60 days upon the first bill, by this expedient. In this case there being no precedent debt, the bill could not be treated as waste paper, and sent back for that reason.(a)

Again : the bill was drawn by one who had no funds in the hands of the drawee. A bill is good, only upon the supposition of funds, which are transferred by the draft, to the payee. Here the bills were drawn on a mere speculation.

*Rea & Butler* were not in sufficient credit to warrant the purchase and transmission of their bills. When one undertakes, for a reward, to perform any work, he is bound to use a degree of diligence adequate to the performance of it. His obligation should be rigorously construed ; and he is answerable for slight neglect, where no more could be required of a mandatary than ordinary exertions.(b) The duty of a factor lies in *feasance*. Here was gross negligence. Before taking these bills, the defendants were bound to be satisfied that the parties were in good credit. They should diligently have enquired into their circumstances ; but no such inquiry appears.

Whatever might have been the credit of *R. & B.* at *Savannah*, there is no doubt that the drawee was in bad

ALBANY,
Feb. 1824.

LEVERICK
v.
MEIGS.

(a) *Murray* v. *Gouverneur and others*, 2 John. Cas. 441.

(b) *Jones on Bailment*, 98.

ALBANY,
Feb. 1824.

LEVERICK
v.
MEIGS.

(c) 6 Br.
P. C. Tomlin's
ed. 280.

(d) Jac. L.
D. del credere.
M'Kenzie v.
Scott, 6 Br.
P. C. Tomlin's
ed. 280.
Scrimshire v.
Alderton, 2
Str. 1182. Pa-
ley's Pr. & Ag.
40. Hammond
on Parties to
Actions, 29.
(e) Scrim-
shire v. Al-
derton, per
Lee, Ch. J. 2
Str. 1183.
Grove v. Du-
bois, 1 T. R.
115. id. 286.
Houghton v.
Matthews, 3
B. & P. 488,
per Chambre,
J.
(f) 1 M. &
S. 576.
(g) 2 Campb.
586.

credit. The bill was a remittance. The object was to pro-
cure payment in the city of New-York, where funds were
supposed to lie. The defendants, then, should not have sent
bills upon a man of straw. This was not fulfilling their
duty as agents. It is enough to charge the defendants with
negligence, that the drawee was notoriously in bad credit.
The person primarily liable on the bill is the acceptor,
who stands in the same situation as the maker of a note.
The drawer is, like the endorser of a note, a mere sure-
ty. Suppose then, instead of the bills, that T. C. Butler's
notes had been sent to New-York, endorsed by R. & B.
could a factor justify such a remittance ? The case of
M'Kenzie v. Scott,(c) shows the duty of a factor in remit-
ting bills. The person, upon whom the bills are drawn,
must be in good and universal credit at the time.

But we claim upon the del credere commission and guar-
anty contained in the letter of the 24th December. This
was acceded to on the part of the plaintiff, and the com-
mission charged by the defendants. A factor under a
del credere commission, is answerable directly as a vendee ;
or, if not so, he is answerable collaterally, which amounts
to the same thing in this instance.(d) It will be seen, from
the cases cited, that del credere and guaranty are the same.

The factors were bound as vendees or guarantors to pay
in New-York; and unless the bills were available, they did
not operate as payment. The remittance was thus at the
risk of the defendants. A sale by the factor creates a con-
tract between the principal and the vendee, or the princi-
pal may charge the factor at his election. The law is so
considered by a series of authorities, in relation to a factor
acting under a del credere commission.(e) M'Kenzie v.
Scott resembles this case in all its material parts. The
arguments in that case are all condensed in 1 Liver-
more on Agency, 410. The authorities cited shew that the
guaranty of the del credere factor extends, not only to the
responsibility of the vendees, but he is bound to pay in the
first instance. The following authorities are to the same
effect : Morris v. Cleasby, (f) Wienholt v. Roberts,(g)
Com. Dig. Merchant, (C) Paley's Pr. & Agent, 40.

But suppose the defendants to have been mere guarantors, *Fell on Guaranties*, 1, defines the nature of their undertaking. It is, that the debt shall be paid to the principal, the person to whom it belongs—not merely the factor. To stop at the latter is short of the great purpose to be answered. The principal has not been paid. The notes taken upon the sales have been exchanged for bills which produced nothing. The guaranty is not performed.

*R. Emmet*, contra. 1. The guaranty for which the defendants received a commission was for the sales only, and did not extend to the remittances.

2. The defendants acted in good faith, and with due caution, as the factors of the plaintiff, in making remittances to him.

It is admitted that the bills are good in form, but denied that they are so for the purpose of transmission. I am not aware of any such distinction. Allow that they are drawn upon a member of the same house with the drawers, there is nothing singular in this. It accords with a very extensive practice in the commercial world. The real and only question is, whether the defendants believed the house of *Rea & Butler* to be in good credit.

That there were no funds with the drawee, is a mere assumption, unwarranted by the testimony ; but if there was a want of funds, to charge the defendants, it should be proved that they knew of the deficiency. The case of *M'Kenzie* v. *Scott* does not, as supposed, decide that the factor is bound at his peril, to remit bills on a house of *good and universal credit* : nothing of this is mentioned in the marginal note to that case ; nor is it found in the case itself, except in the arguments of counsel.

The guaranty was of sales only ; and did not extend to remittances. The case turns upon the intent and understanding of the parties ; not upon the abstract nature of a *del credere* commission. To fix this title to the transaction between these parties is a misnomer. The plaintiff himself points to the very bills afterwards remitted, as those which he would be willing to receive ; and the negotiation

upon the guaranty is confined, in terms, to the sales of the goods. The guaranty of remittances is entirely a different affair. Each remittance was made under the specific direction of the plaintiff, whereas in *M'Kenzie* v. *Scott*, and the other cases cited for the plaintiff, the transmission was under the general authority of the factor. This is the distinction by which the case is taken entirely out of the operation of the authorities referred to ; and it is a turning distinction in the cause. There are many reasons why the sale and remittance should be kept separate. They are so in their nature ; and it cannot follow, that because sales are guarantied, remittances must be so. The parties to transactions like this, generally reside at different ports—their knowledge of individual credit being different. It is convenient for the merchant to employ a factor to guaranty foreign sales ; while, at home, he understands, much better than his factor, the credit of parties to the bill through whom the remittance is to be made. Suppose the principal had, in this case, directed an investment of the avails in merchandize at *Savannah*, instead of a remittance, would it have deprived the defendants of their commission ? No. The commission relates merely to the sales. The same may be said of a sale upon a *del credere* commission. No matter how the proceeds are disposed of, though not remitted ; the factor is entitled to his commission in both cases. According to the argument on the other side, a *del credere* always implies a remittance, which is certainly not involved in the definition. In both cases it would be imposing an additional duty, beyond the nature of the engagement, and without an adequate compensation. As to the cases shewing the undertaking of a *del credere* factor to be absolute, no doubt they are law, but we deny that they have any bearing whatever upon this case.

Suppose that up to the time of the remittance, the defendants alone were liable, and that the vendees were not liable ; what was the nature of the defendants' engagement ? Merely that the vendees should pay, and that the defendants would draw for the purpose of remittance, when called upon—not to see that the remittance was fully effected. Allowing ours to be a *del credere* commission, the only case

quoted against us, which deserves a serious consideration, is that of *M'Kenzie* v. *Scott* : but, in that case, the agent transmitted the draft without previous instructions. He endorsed the bills, and stood liable, independent of his *del credere* character. The reasons of the decision are not given; though one ground was, probably, the endorsement by the factor. From the whole case, it is evident that it did not go merely on the ground of the defendant's *del credere* character. The reporter puts the defendant's liability upon the principle, that he had parted with the original acceptances, which were good, for those which were bad. The point of *del credere* is certainly touched very lightly throughout; and it is impossible to determine what influence this had in the decision. It might have had none; or it might have been considered in connexion with the other circumstances. The case of *Lucas and others* v. *Groning*(i) was the case of a *del credere* commission, and the Court agree that had there been instructions to remit, it would have taken all responsibility from the factor and thrown it upon his principal. The case was decided in favour of the plaintiff, upon the ground that there was a want of authority.

The remaining question then is, did the defendants act in good faith? No argument against this arises from a want of credit simply, either in the drawers or acceptor. A factor is not bound to know the credit of the drawee. He cannot know it. Suppose the drawee had resided at *Bordeaux* or *Hamburgh*; a knowledge of his credit might be exacted with the same propriety as in this instance. It lies with the plaintiff to shew affirmatively, that the defendants knew the drawee to be of doubtful credit. The question more properly relates to *Rea & Butler*, whether they were in such credit that their drafts might be received by the defendants, without incurring the imputation of negligence. The factor is bound to do no more than to believe and understand; though we admit he was to exercise greater caution in relation to the drawers, who resided near him, than the drawee, whom he does not, and cannot be required to know.

ALBANY,
Feb. 1824.

LEVERICK
v.
MEIGS.

(i) 7 *Taunt.*
164. 2 *Marsh.*
460, *S. C.*

*T. A. Emmett,* (same side.)   The argument on the other side would subject agents and factors to a responsibility unknown to our law.   *Jones* alone has been cited to fix the extent of this responsibility; but in *Thorn* v. *Deas,*(j) the ideas of *Jones* upon one branch of the same subject, came under consideration, and were directly overruled ;(k) and the Chief Justice condemned the whole head of *mandates* in Sir *W. Jones,* as a part which was hastily and loosely written.(l)   The extent to which *Jones* would carry our liability, is that of the civil law only.   Our own law knows of no responsibility in a factor for any thing short of gross negligence.   The action here is assumpsit in form; but the principles on which it is to be sustained are the same as if it had been an action on the case.

(j) 4 *John.* 34.

(k) *id.* 96, per *Kent, Ch. J.*

(l) *id.* 100.

The doctrine of our law as to *del credere* liability, is founded by the other side, on the argument of counsel in *M'Kenzie* v. *Scott ;* but as the defendants did not act under such a commission, it is necessary to inquire how far they are accountable in their real character.   This is only for breach of orders, gross negligence or fraud.(m)   If they acted in good faith, this is a full protection.(n)   The question of negligence should have been submitted to the jury, as well as what degree of negligence was imputable to the defendants.   It should, at least, have been shewn, that the defendants knew *Butler* of *New-York,* to be a member of the same house with *Rea* & *Butler* at *Savannah.*   All the defendants were bound to do, was to remit in the usual and proper mode ; and it does not appear that they could have obtained better bills on *New-York.*   *Russell* v. *Hankey,*(o) presents a case of slight neglect.   The defendant, a banker, gave up the bills of his correspondent to the acceptor, on receiving a check for the amount, on a *London* banker, which proved bad ; but because the defendant had done what was usual in the course of trade, he had a verdict, and on motion for a new trial, the Court even refused a rule to shew cause.   That a factor is bound to no more than good faith and reasonable diligence, appears also from *Evans* v. *Potter.*(p)   Had the plaintiff deemed the mode of drawing, in this case, improper, he had a full opportunity to object ;

(m) *Moore* v. *Mourgue, Cowp.* 479. *Comber* v. *Anderson,* 1 *Campb.* 523. *Joice* v. *Sims,* 1 *Yeates' Rep.* 409.

(n) *Liotard* v. *Graves,* 3 *Caines' Rep.* 226. *Lawler* v. *Keaquick,* 1 *John. Cas.* 174.

(o) 6 *T. R.* 12.

(p) 2 *Gall. Rep.* 13.

but altogether omitted to do so. The case has been likened to a promissory note on *Butler*, but this would have been out of the ordinary course of remittance ; and it is not fair to claim the same effect upon ordinary, as upon extraordinary paper, carrying suspicion upon the face of it. If negligence is to be fixed on factors from a want of credit in a foreign drawee, the knowledge of such want of credit should be brought home by the clearest proof. No such knowledge in this case is proved, or even pretended ; and no suspicion existed which imposed the burthen of inquiry. The duty of remittance is pressing and speedy ; and by requiring an absolute knowledge of credit, such as is contended for, we should render a safe discharge of the duty impossible. The factor can act only from the estimation which the parties to the bill have in the commercial world. Here the general character of the drawers was good ; and farther the defendants were not bound to examine. No inquiry whatever is necessary, except by way of excuse, where a suspicious character is first established ; or where a character for good credit is not yet established, owing to the newness of the house, or other cause. The factor ought not to be holden amenable for particular facts. With him, the credit of the parties to the bill depends on their general character, which can no more be impeached by particular circumstances, than the credit of a witness whose character is fair.

A factor is not bound to remit without instructions from his principal ;(q) and when he does remit under these instructions, it is at the risk of his principal.(r) It is the principle, that the factor is not bound to remit without specifick instructions, which governed the case of *M'Kenzie* v. *Scott,* as well as that of *Lucas* v. *Groning,* and neither decision had any thing to do with the nature of a *del credere.* If *M'Kenzie* v. *Scott* had been decided merely in reference to *del credere* duty, the case of *Lucas* v. *Groning* could not have arisen. Why should *Gibbs,* Ch. J. have put the question to the jury, or the Court thought it at all important, on the motion for a new trial, whether authority had or had not been given ? The whole risk would have been thrown on the

(q) 1 *Liv. on Ag.* 68; *Ferris* v. *Paris,* 10 *John.* 285. *Clark* v. *Mood,* 17 *Mass. Rep.* 150.

(r) 17 *Mass. Rep.* 150, per *Parker, Ch. J.*

ALBANY,
Feb. 1824.

LEVERICK
v.
MEIGS.

defendant, without examining the question of authority. That case is stated expressly to be one of a *del credere* character.

Though a *del credere* makes the factor a debtor at the moment of sale, yet he does not cease to be a factor; otherwise the question in *Schrimshire* v. *Alderton* never would have arisen. He is deemed, on the sale, instantly to have received the proceeds, instead of waiting for the actual receipts. He holds the receipts, in both cases, subject to the orders of his principal. He is debtor, in respect to his duty, to account. When an actual debtor is directed to remit, the moment he purchases the bills he has paid his debt, as fully as if he had executed instructions to pay in stock, goods, or any other way.

The term, *del credere*, is not used in the transaction between these parties. But give the plaintiff all which he claims—suppose it to be a *del credere* transaction; and allow the consequence, that the defendants would, therefore, have been bound to guaranty the remittances—cannot parties limit their engagements ? *Conventio vincunt legem ;* and the parties, most evidently, from the language and acts of both, never intended to go beyond the mere guaranty of the sales.

*Wells*, in reply. To determine the general duty of factors, I certainly felt myself authorized to refer to Sir *William Jones*, as a book of very high authority, containing not only the doctrines of the civil, but the common law. It establishes a most reasonable distinction between the merely gratuitous and the venal mandatary. Nothing short of gross negligence implicates the first—slight negligence the latter ; and so it would be decided, if the question were raised here for the first time ; for what would be gross neglect in one who acts gratuitously, might be equalled by slight neglect in a venal undertaker. The authorities relied upon against the doctrine of *Jones*, in the case of *Thorne* v. *Deas*, are those of the merely gratuitous mandatary. *Livermore on Agency*,(s) lays down the same rule, and grounds himself on *Mallough* v. *Barber*,(t) and *Park* v. *Hammond*.(u) He says,(v) " It is not sufficient

(s) 1 Liv.
on Ag. 352.
(t) 4 Campb.
N. P. C. 150.
(u) id. 344.
6 Taunt. 495,
S. C.
(v) 1 Liv.
on Ag. 355.

that he (the factor) has been guilty of no fraud, or of no such gross negligence as would carry with it the insignia of fraud. He is required to act with reasonable care and prudence in his employment, and exercise his judgment after proper inquiries and precautions." We go upon the ground that a factor is holden to the strictest diligence. The impeachment of *Jones,* in *Thorne* v. *Deas,* by the Ch. Justice, relates to a small point in the work, which has no application here, and surely ought not to condemn the whole. Its reputation is too well established to be in danger of such a fate. It was produced by one of the most accomplished scholars and jurists in the world.

But if these defendants were ignorant of the credit of the constituent members of the house which drew the bills, this was, of itself, gross negligence. No funds are shewn in *New-York.* Though the evidence, as to the questions of credit and negligence, might have been referred to the jury, yet the whole is by consent upon the case, and fairly before the Court. It is properly here, as presenting mixed questions of law and fact.

I still think that the case of *M'Kenzie* v. *Scott* turned principally upon the effect of a *del credere* commission; and it has been so treated by all the elementary writers since the decision of that cause. It is clear that remittances were to be made in that case. They are mentioned specifically, in one letter, and it is plainly inferrible that they had been directed before. At any rate, the bills were accepted on their receipt, which was equivalent to original instructions, being a full recognition of the act.

*Lucas* v. *Groning* has no bearing upon the case, one way or the other. I had looked into that case, and though decided against the factor, I omitted to cite it. The case was decided upon a point which rendered it unnecessary to take any one ground involved in this. But I hope my clients are not to suffer, because the counsel in that cause, having other and sufficient arguments, omitted to draw into question the effect of a *del credere* commission.

Certainly, the admission of gentlemen, that the factor is accountable as a vendee, amounts to a *relicta.* When we

look to the factors, it is as vendees—not as factors and vendees. I admit they might, though acting under a *del cre-dere* commission, have continued factors after sale, for the mere purpose.of enabling their principal to stop a payment to them from the real vendees ; yet there is no such character, I believe, as a *quasi* factor. By acting under a *del credere* commission, he loses his character of a common factor. If he does not—if gentlemen are correct, they destroy all distinction between an ordinary factor, and one acting under a *del credere* commission. When we look to the defendants, it is, then, as naked vendees. It is a new doctrine, that when a debtor remits, the debt is paid, because the creditor has requested payment. Would sending grain or bills to the creditor be a discharge ? True, if there be a specifick direction to pay to A. B. or vest the debt in goods, it is a payment when the direction is complied with. It is a conversion of the debt into other hands, or into goods, and must necessarily then remain at the risk of the creditor ; but without such specifick instructions, the remittance is always at the risk of the debtor. If the bill, being foreign, is unavailable, it is no payment, and damages may be recovered on its being protested.

No particular form of words is necessary to constitute a *del credere* commission. Any expressions importing a guaranty are sufficient, as in *Scrimshire* v. *Alderton*. The present is a clear case of guaranty, and whether it be called *del credere* or not, is immaterial. It is agreed that a commission was given to guaranty the sales ; and the avails of the sales being lost, the defendants are accountable. If the *del credere* commission does not extend to the remittances, what is the plaintiff's money paid for ? The defendants were bound eventually to guaranty the paper given upon the sales ; and ought not the same accountability to be extended to the bills ? These are a mere substitute for the notes. Unless the responsibility is made to embrace the remittance, the defendants took pay without incurring any additional risk whatever.

Again : the defendants were not only to sell but *remit*, and the terms of their duty was not complied with, until they had remitted. To the first duty and commission of sale was

superadded the *del credere* commission and duty, which is of that remittance ; and the bills were, therefore, at the defendants' risk.

WOODWORTH, J. The first question arising in this cause is, whether the defendants are liable on the ground of negligence, in taking the bills remitted to the plaintiff ?

In examining this question, the defendants will be considered as factors and agents, without reference to the effect produced by a guaranty of the sales.

Where the factor's power is general, it has been held, that he must exercise a sound and honest judgment, in those matters which are left to his discretion. He will not be responsible, if he appear to have acted to the best of his abilities, and not to have been guilty of breach of orders, gross negligence, or fraud. (*Moor* v. *Mourgue, Cowp.* 480. *Liotard* v. *Graves,* 3 *Caines,* 238. 1 *John. Cas.* 175. *Van Alen* v. *Vanderpool,* 6 *John.* 72. 1 *Campb.* 598. 1 *Com. on Con.* 236. 1 *Livermore,* 342.) It is not sufficient, however, that he has not been guilty of fraud, or such gross negligence as would carry with it the badges of fraud. He is required to act with reasonable care and prudence, in his employment, and exercise his judgment after proper inquiry and precautions. If ordinary diligence would have enabled him to learn the discredit or insolvency of the party, he will not be discharged from responsibility to his principal. (1 *Gall.* 361. 3 *Campb.* 291. 1 *Livermore,* 355.) When a factor's power is limited, he must strictly adhere to his orders, and generally must, at his peril, pursue them literally. (3 *Caines,* 238. 1 *Com. on Con.* 236. 1 *Livermore,* 368.) A brief examination of the facts will determine, whether the defendants can be protected according to the principles thus laid down. As a general proposition, I apprehend that where a factor is directed to remit in bills, if he procure such as are drawn by persons of undoubted credit at the time, it is a compliance with the duty he has to perform. The person on whom the bill is drawn, rests in the discretion of the drawer. The law presumes he has effects of the drawer in his hands. If the factor has no cause to doubt the fact, he

may take the bill consistently with the duty he owes his prin-. cipal, and will not be liable on the ground of negligence, although it should afterwards turn out that the drawee was not of known responsibility. In such a case, it is not required of the factor first to ascertain whether the person on whom the bill is drawn is in good credit. Where the principal and factor reside at a distance from each other, it cannot be reasonably expected that the latter will have it in his power to obtain information, so as to decide with safety. A merchant in *Savannah* cannot be supposed to possess knowledge, beyond a very limited extent, of the credit of individuals in the city of *New-York.* The utmost diligence in making inquiries would be to no purpose. The consequence of such a doctrine would be, in most cases, to prevent a remittance. A factor would be unwilling to incur the risk. If the acceptor was in bad credit when he accepted the bill, and it was subsequently protested for non-payment, the factor would become liable, unless the amount could be collected of the drawer. Such strictness is not intended by a principal, requesting his factor to remit funds from a distant place. It would necessarily produce delay and embarrassment, and be found an inconvenient rule in practice, that ought not to be sanctioned. The case before us is of a different character. The bill was drawn by *Rea & Butler,* as partners, on *Thomas C. Butler,* one of the firm, and accepted by him. One partner carried on business at *Savannah*—the other at *New-York.* There were two establishments. Was this fact known to the defendants when they purchased the bill ? There is no direct evidence of their knowledge ; but, from all the testimony, I think the presumption is, that they knew *Thomas C. Butler* was a partner. Some of the witnesses examined speak of him in that character. From the testimony of others, it is matter of plain inference. *Rea,* alone, conducted business at *Savannah.* The witnesses have reference to the credit and concerns of the firm, as managed by *Rea* at that place. They attribute the failure of *Rea & Butler* to the failure of *Thomas C. Butler.* It appears, therefore, highly probable, that this fact was of general notoriety. But, if not, enough is shown to have put the defendants on inquiry.

In *Burrill* v. *Phillips*, (1 *Gal.* 36) Mr. Justice *Story* observes, " In order to affect the factor with the imputation of negligence, it is sufficient if he have notice of facts which ought to put a person of ordinary prudence on his guard." The same doctrine was held by Lord *Ellenborough*, in *Simpson* v. *Swan*, (3 *Campb.* 291.) If there was negligence in not making inquiry, the defendants must abide the consequences arising from that omission. The question then is, whether they have shown that *Rea & Butler* were of undoubted credit, when they purchased the bill. So far as respects the firm of *Rea & Butler* doing business at *Savannah*, I think the evidence satisfactorily shows the house was in good credit. It is true, that two or three witnesses doubted the general credit, on account of the standing of *Thomas C. Butler* in *New-York*. There seems to be no question but that the house at *Savannah* was doing business to advantage. The defendants' witnesses speak only of this concern ; they knew nothing of *Butler's* affairs ; but the plaintiff proved that, at the time, he was doubted, and in bad credit, and shortly after failed. From this statement it is obvious, that the real credit or solvency of the house could not be established, by shewing that *Rea* was in good credit at *Savannah ;* or that that portion of the concern conducted by him, had yielded a profit. At the time these favourable opinions were entertained, he was insolvent, in consequence of his connexion with *Butler*. The question whether *Rea & Butler* were in good credit, cannot be answered satisfactorily, without ascertaining the standing of *Butler* in *New-York*. If that was bad, the other partner is affected by it. Immediately after the intelligence of *Butler's* failure, *Rea* also failed. If then the defendants elected to purchase a bill of this firm, they necessarily became bound to prove the credit and solvency of both partners, to exonerate themselves from the imputation of negligence. If they cannot do this, they are clearly liable. There is no hardship in this doctrine— If they were not satisfied as to the credit of *Butler*, they were not bound to purchase ; if they could not obtain bills drawn by persons in good credit, they were not bound to remit. The instruction of a principal to his factor, to remit in

ALBANY,
Feb. 1824.

LEVERICK
v.
MEIGS.

bills, does not subject the latter to liability for a breach of or-
ders, until good bills can be obtained. A contrary doctrine
would, unnecessarily, increase the hazard of the principal.
It would break in upon the rule, believed to be universal,
that the factor who remits, cannot protect himself in case
of a failure, unless the drawers were, at the time, consider-
ed responsible. I am, therefore, of opinion that the defen-
dants assumed the risk of *Butler's* solvency.

But, on another ground, I think the defendants liable.
They acted in pursuance of particular instructions, and
were bound to pursue them strictly. The plaintiff's letter
of *January* 9*th*, 1819, directed the defendants to negotiate
the paper received for his shipments, in such way that he
might receive the funds in *New-York*, either in bills, or a
draft at short sight, *on some good house*, in time to meet his
note given at 90 days.

The defendants' letter of *January* 20*th*, 1819, acknowl-
edges the receipt of the plaintiff's letter of the 9*th*. They
enclosed the first bill on *Butler*, for $743,28. On the 27*th*
*January*, the plaintiff again wrote to the defendants, in which
he requests them to procure a good draft on *New-York*. At
this time he had not received the letter of *January* 20*th*. On
the 5*th February*, the defendants wrote, inclosing the second
bill, for $1384,78. They had not then received the plain-
tiff's letter of *January* 27*th*; it was not acknowledged, nor
had sufficient time elapsed for its arrival. The defendants
must then be governed by the letter of *January* 9*th*. On
looking at the directions, it will be seen, that the plaintiff
wished to provide for his note of 90 days. It was, therefore,
important that the acceptor should be of undoubted credit;
if he was, the bill at 60 days might be discounted immediate-
ly after acceptance, and the object in view attained; but if
the acceptor was doubtful, delay was the inevitable conse-
quence, however unquestionable the drawers might be. He
determined, therefore, to be explicit on this point, and requi-
red the draft to be on *a good house* in *New-York*. This has
been wholly disregarded. It does not appear that any inqui-
ry was made by the defendants respecting *Butler*; their wit-
nesses knew nothing of his standing; the plaintiff proves he

was not entitled to credit. Here was gross negligence, a departure from orders, and thereby an assumption of the risk of *Butler's* credit. On this ground the plaintiff is entitled to recover.

The next inquiry is, whether the defendants are liable by reason of the guaranty of the sales.

Under date of *January 20th*, 1819, the defendants say, " we have concluded to guaranty our sales at 1 1-4 per cent." What is the legal effect of such a contract ? By an agreement, called *del credere*, a factor, for an additional premium, beyond the usual commission, when he sells the goods of his principal, becomes bound to pay the price at all events. In *Grove* v. *Dubois*, (1 *D. & E.* 115,) Lord *Mansfield* observes, " it is an absolute engagement to the principal from the broker, and makes him liable in the first instance ; there is no occasion for the principal to communicate with the underwriter, though the law allows the principal, for his benefit, to resort to him as a collateral security." A broker with such a commission may set off a loss upon a policy, happening before a bankruptcy, to an action by the assignees of the bankrupt for premiums on policies, underwritten by him, and for which he had debited the broker. The same doctrine is laid down in 5 *Com. Dig.* (*C.*) 55. It is said the factor becomes liable in the same manner as if he were himself the purchaser of the goods, and was debited for them by the principal as such. (1 *Com. on Con.* 253. 1 *Livermore*, 209.) In *Wienholt* v. *Roberts*, (2 *Campbell*, 587) Lord *Ellenborough* considered the broker, with a *del credere* commission, as the owner of the policy ; and he being answerable to the insured for the loss, the amount might be set off in an action brought against him, by the underwriter, for premiums. So also in *Houghton* v. *Matthews*, (3 *Bos.* & *P.* 485,) the doctrine is recognized, that where a factor sells under a *del credere* commission, he is to be considered, as between himself and the vendee, as the sole owner of the goods. In *Morris and others* v. *Cleasby*, (1 *Maule & Sel.* 576,) it was held that a broker who pays to his principal the price of goods, sold by him for the principal, under such commission, is entitled to set off the amount against the purchaser.

The effect of the commission is, in several particulars, to place the factor in a new relation, as to his principal. It is true, he is a debtor, but the principal still retains the right, at any time before payment, to resort to the purchaser as collateral security. It is a rule for the protection of the principal. A general factor may wait to receive instructions as to the mode of remitting the net proceeds, and is not liable to an action until a default, on his part, in remitting or paying the proceeds according to the orders of his principal. (*Ferris* v. *Paris,* 10 *John.* 285.) The only difference between a factor, acting under a *del credere* commission, or without one, is as to the sales made. In the former case he is absolutely liable, and may correctly be said to become the debtor of his principal ; but it is not strictly correct to say he is placed in the same situation, as if he had become the purchaser himself; for, as we have seen, the principal, notwithstanding this liability, may exercise a control, not allowable between creditor and debtor. When the principal appears, the right of the factor to receive payment ceases. This shows that the effect of the commission is not to extinguish the relation between principal and factor, but applies solely to a guaranty that the purchaser shall pay. It is not a contingent liability, I admit, so as to require legal measures to be exhausted against the purchaser, before the factor is bound, but an engagement to pay on the day the purchase money becomes due. Although the factor is absolutely liable, he is not bound to pay, until the money becomes due from the purchaser. It may, therefore, be more correctly laid down, that the factor under a commission, becomes a debtor to his principal, with the limitations I have stated. The case of *Baker and others* v. *Langhorne,* (6 *Taunt.* 519,) accords with this distinction. *Gibbs,* Chief Justice, says, " I think the mistake in *Grove* v. *Dubois* was, to suppose that he, who was only liable in the second instance, on the failure of the original debtor, could, in any case, be considered as the original debtor himself. Unless the factor, by his engagement to guaranty, becomes a debtor absolutely, so that the sale made to the purchaser places the factor in the same situation as

if he had been the real purchaser of the goods himself, the doctrine contended for by the plaintiff cannot be supported. It is only on this ground that he can be bound to guaranty the remittance. This arises from the general principle, that the debtor is bound to make payment to his creditor, and consequently, if he remits in bills which turn out of no avail, it is no payment. It does not discharge a precedent debt, unless it be so expressly agreed between the parties. (2 *John. Cas.* 441. 1 *Salk.* 124. 1 *Esp. Cases*, 8.) The commission *del credere* does not make the agent cease to be a factor. He may be considered as a factor, who has sold for cash. Beyond the engagement that the purchaser shall pay at the time agreed on, he is bound by no other law than a factor without a *del credere* commission.

Independent of authority, I do not perceive how any well founded doubts can arise as to the meaning of these expressions. A principal, knowing that his factor would not be answerable for the solvency of the purchasers, if he acted with due caution and prudence, does not request him to purchase the goods himself, but to guaranty the sales to others, or, in other words, to bind himself that the purchasers shall pay according to the terms of purchase. It is impossible, I apprehend, to mistake the intention of the parties to such a contract. It has reference only to that portion of the factor's duty, which relates to selling. How then can it be applied to another distinct duty of the factor, to remit according to his instructions ? I very much question, whether any merchant in this country ever considered that a guaranty of sales had any connexion with the remittance afterwards.

But it has been urged, that this doctrine has the sanction of authority. After an attentive consideration of the cases, I have arrived at a different conclusion. It is supposed that the case of *M'Kenzie et al.* v. *Scott*, (6 *Brown Par. Ca.* 280,) is decisive on this point. There the factor sold corn, and took bills from the purchasers, which he endorsed to the banker at the place of sale ; and having received the banker's bill, payable to the factor's order on a

ALBANY,
Feb. 1824.

LEVERICK
v.
MEIGS.

house in *London*, at 75 days, endorsed and transmitted it to his principal, who got it accepted. The acceptors and the drawer failed. It was held that the factor was answerable for the amount of the bill. The editorial note by *Tomlins* is, " the factor being personally liable, under his commission *del credere*, to satisfy his principal the price of the goods sold." It was argued on various grounds, that the appellants were not liable ; particularly that they only became bound to warrant the solvency of the purchasers ; that the remittance of the money is a transaction different and distinct ; that it is sufficient, if the factor remit by the bills of a house in good and undoubted credit at the time. The respondent insisted that the factors were absolutely liable, in the first instance, for the payment of the price ; that it was at any rate clear, from the whole circumstances of the case, that such was the nature and extent of the guaranty ; that, by endorsing the bills, and the repeated engagements subsequently, as well as by reason of fraud and breach of faith in obtaining delay of payment, under an express assurance to pay, they were liable. The House of Lords ordered the appeal to be dismissed, but no reasons for the dismissal are given. It cannot be pronounced on what point the cause was decided. The case, however, discloses enough to warrant the decision, if no question had been raised as to the effect of the *del credere* commission.

I will only notice one fact : The respondent wrote to the appellants, saying he was much surprised, that they did not send a remittance. They forwarded a draft payable 75 days after date. This was not authorized by the respondent. Admitting that a request to remit money in the hands of a factor will justify the transmission of a draft on persons in good credit, the principal is not bound to accept a bill payable at a future period, unless by consent. In this case, there was no allusion to bills payable at a future day. If an order to remit money may be satisfied by transmitting a draft on sight, it is no authority to make the principal risk the solvency of the acceptor for 75 days. On this ground I apprehend, the decision is warranted, independent of the *del credere* commission. If the doctrine now contended for

had been settled in *M'Kenzie* v. *Scott*, some notice would have been taken of it in *Lucas and others, assignees of Doorman* v. *Groning*, (7 *Taunt.* 164.) In the last case, goods were consigned to a house in *Hamburgh*, to sell on a commission *del credere*. The consignees purchased, with the proceeds, bills on *London*, which they specially endorsed and remitted to the defendant, and advised the consignor they were bought for his account and debited to him. The bills being disonored, a jury found that the consignees were not authorized to purchase bills for the account and risk of the consignor. The Court held the verdict to be right. The question was, whether the bills were remitted upon the account and at the risk of the consignor. No notice is taken by the Court or counsel, that the factors were bound to pay their constituent, in the same manner as if they were themselves the purchasers. If this doctrine had been settled in *M'Kenzie* v. *Scott*, it would at once have been an answer to the defence that the bill was at the risk of the consignor; but the cause was decided on other grounds. It is evident, the Court did not recognize the doctrine that a guaranty of the sales is equally so of the remittances. I am, therefore, of opinion, that the defendants are not liable upon the guaranty; but being chargeable with negligence, and having deviated from instructions by drawing on a person not in good credit, the plaintiff is entitled to judgment.

SAVAGE, Ch. J. The question in this case is, whether the defendants have made themselves liable for the amount of the bills, with which they attempted to make remittance.

To determine that question, it is proper to enquire, 1st, whether they, as factors, used due diligence in transacting the plaintiff's business; and 2d, whether they are liable on their guaranty.

1. The general duty of a factor is, to procure and communicate all necessary information to his principal relating to the state of the market ; to execute faithfully and promptly his employer's orders ; and consult his interest in all matters referred to the factor's discretion ; and to be

LEVERICK
v.
MEIGS.

punctual in all his accounts and correspondence. (1 *Livermore*, 68.)

The factor's contract, is to sell and render an account. He ought not to remit at his own risk ; nor unless in compliance with instructions. (17 *Mass. Rep.* 148, 150. 10 *John.* 286.)

The factor is bound to exercise that degree of diligence which a prudent man exercises in his own affairs, and if the debt be lost, the loss falls on the principal. The same degree of care and diligence is required, in making remittance, when instructed so to do. The instructions of the principal are at all times to be strictly pursued.

When the relation of principal and factor commenced in this case, does not appear. The defendants, on the 24th *December*, 1818, inform the plaintiff, that they have sold some butter and gin, at 60 and 90 days ; and on the 2d *Jan.* 1819, that they have not been able to exchange it for bills on *New York*, though they intended to do this. They assure him that the paper taken by them is undoubtedly good, though it could not be discounted, as the banks were fearful of a demand for specie. On the 9th *January*, 1819, the plaintiff approves the acts of the defendants, and adds, " I will thank you to negotiate the papers received for gin and butter, in such a way that I may receive the proceeds here, either in the bills you have mentioned, or a draft at short sight, on some good house, in time to meet my note, given for those articles, at 90 days." It was the duty of the defendants, under these instructions, to enquire into the standing, not only of the drawers of the bills, but also of the drawee.

The weight of testimony in the case is certainly in favour of the defendants, as to the standing of the house of *Rea & Butler* at *Savannah*. But it is shewn, by five witnesses, that the credit of *Thomas C. Butler* was very suspicious for several months before his failure ; and two of them say, that he never was in good credit.

The defendants do not contradict this testimony ; and it is argued by their counsel, that it is enough for them to enquire into the standing of the drawers ; and that they are not bound to know that of the drawee.

It appears to me, however, that after being cautioned, as they were, to procure drafts upon *some good house*, they ought to have shewn that they enquired into the standing of *Butler*, and were informed that it was good. The plaintiff told them why he wanted drafts on a *good house*—it was to meet the payment of his note at 90 days. He did not want a draft which must ultimately be prosecuted and collected at *Savannah*, and then again remitted. The defendants have not shewn any diligence, in endeavouring to carry into effect the object which the plaintiff had in view. They do not shew, that they made any enquiries as to the solvency of *Thomas C. Butler.*

In the case of *Rundle* v. *Moore*, (3 *John. Cas.* 36) the Court said, " If the defendants, as the agents or factors of the plaintiffs, have, through mistake or design, disobeyed their instructions, they are undoubtedly responsible."

Having come to the conclusion, that the defendants are liable on the ground of negligence in not pursuing their instructions, it seems to be unnecessary to examine the other point in the cause, to wit, whether they were liable on their guaranty ; but having looked into the cases cited, I have no hesitancy in giving my opinion on that point.

In all actions founded upon contract, we must see what the contract is, before we determine upon the liability, or the rights of the parties, In this case, the defendants, after stating that the paper which they had already taken for the plaintiff was undoubted, add—" And we are willing, in all cases, to add our guaranty *to our sales*, for the usual commission for so doing." The plaintiff answers—" I should wish you to guaranty the sales of my different shipments, which are made at a credit, at the usual commission ;" and mentions one and a fourth per cent. which is agreed to by the defendants, in their next letter. This is the whole contract, and from these letters we must ascertain the meaning of the parties. The plaintiff urges sales for cash, when practicable, and surely did not expect to pay the one and a fourth per cent. for cash sales. Not one word is to be found in this contract about remitting; but the defendants evidently meant to guaranty the paper which they took for goods sold. That

ALBANY,
Feb. 1824.

the plaintiff so understood it, I think is clear ; for he wishes them to guaranty the sales *made at a credit.* Now there is precisely the same hazard in remitting money, whether paid down or at the end of 60 or 90 days ; but the plaintiff's claim presents this singularity, that the defendants are liable for the sales at a credit, but not for the cash sales, provided the money is lost in remitting, without the fault of the defendants.

It is said that the defendants acted under a commission *del credere,* and that it has been adjudged that a factor, acting under such a commission, is liable at all events. What is the precise import of those words, it is not necessary to inquire. They are said to signify the same as the *English* word *guaranty ;* and if so, then we come back and ask, what did the defendants guaranty ? They did not, in terms, consider themselves as acting under a *del credere* commission. Had they done so, their liability must have depended upon the nature and extent of such an engagement. Where parties fairly enter into such a contract, and when the nature and extent of the responsibility is understood by the parties thus contracting, there is no hardship in enforcing it. The parties, however, must make their own contracts, and having done so, in this instance, it is the duty of the Court to declare the effect of it. It is clear that, in this case, the solvency of the *purchasers only* was intended to be guarantied.

SUTHERLAND, J. concurred.

Judgment for the plaintiff.