Bosworth, Ch. J.
The contract between the parties, as stated in the complaint, was, that Joseph W. Corlies & Co. " undertook and agreed with the plaintiffs to sell said goods, and to be responsible for the prices of the said goods.”
The answer states that said firm “ agreed to sell said goods, and to guaranty the payment of the prices of said sales, at the maturity thereof, to the plaintiffs.” It is undisputed that the sales, by average, matured May 9th, 12th, 1861, and that the balance due plaintiffs is the precise principal sum for which judgment .is entered.' The judgment is for said principal sum of $3,430r<f0, and interest thereon from said May 12th.
The present defendants rendered an account, as early as December 27th, 1860, in which they made themselves debtors as of May 12th, 1861, and sent their acceptances to the plaintiffs for the correct balance maturing that day. By that operation they secured the use of the amount of all sales maturing before May 12th, up to that date.
The giving of the acceptances shows a clear purpose in the defendants to make themselves liable, unconditionally, and for interest subsequent to May 12th if payment was not made on that day, as well .as for the principal itself. And this is but mere equity, they having had the proceeds of the sales to their own use.
Before the acceptances matured they notified the plaintiffs of their inability to pay them.
"The defendants' having in writing agreed, by their acceptances, to pay on the 12th of May the precise principal sum for which judgment is taken, and thus having obtained till that time the use of the amount of all sales maturing prior to that day, and before that day arrived having notified the plaintiffs that they could not pay, any subsequent or other demand became unnecessary, and they ought, in equity and .good conscience, to pay interest from May 12th.
*146 A suit on the acceptances would necessarily have resulted in a judgment for the precise amount of the one entered. And the giving and taking of the acceptances is no bar to an action on the original cause of action. Joseph W. Corlies having died October 26th,. 1860, before the acceptances were given, the persons liable as such acceptors, and on the original contract, (as contracting parties,) are the same.
If, as stated in the appellants’ points, “the legal effect of the acceptances was to certify to the plaintiffs, that on the 12th of May, 1861, the acceptors would have on hand funds of the plaintiffs to the amount of the acceptances, which they would pay to the owners and holders of the acceptances,” then, inasmuch as before the 12th of May, 1861, they notified the plaintiffs they could not pay, or, in other words, would not pay; the plaintiffs, as holders of the acceptances and consignors of the goods, have a strict right to be paid the amount of the acceptances, and interest thereon from their maturity. For that sum the judgment is given. The answer presented no question of substance to be tried, in respect to which the parties do not agree.
The judgment should be affirmed.
Hoetmaet, J., concurred in this opinion,
Robertson, J.
The only prejudice to the defendants arising from the striking out of the answer, and thus depriving them of any defense to any part of the claim of the plaintiffs which it sets up, of which they complain, relates to interest, being for the time between the average date of the sales of merchandise by the defendants and the demand of payment. The interest actually allowed is, of course, the same, whether calculated on the whole amount from such average date, or on the proceeds of each sale from the time the credits on them respectively expired. Interest is always payable on a contract to pay a specified sum of money on a fixed day, or on a special contract. (Van Rensselaer v. Jewett, 2 Comst., 135; Williams v. Sherman, 7 Wend., 109; Feeter v. Heath, 11 Id., 477; Still v. Hall, 20 *147 Id., 51.) If, therefore, the contract of the defendants with the plaintiffs, in consideration of the commission, was that the latter should be paid, either by the purchaser or himself, the proceeds of each sale, on the day the credit given thereon expired, without any demand by the plaintiffs from either, or any other step to be taken to make the-defendants liable, they were chargeable with interest, from the expiration of such credit. What the liability of the defendants was, depends upon the effect given by law to the payment of what is termed a del credere commission; whether it raises a mere guaranty of the solvency of purchasers from the factor on sales by him of the merchandise of the principal, requiring some steps by the latter, to ascertain the readiness of the purchaser to pay, by action, or at least demand, and some notice to the factor that such purchaser has not paid, and he is looked to by means of a demand, or whether it is an absolute undertaking by the factor that the purchaser will pay, on the expiration of the credit, and that if he does not, he, the factor will, without any demand or notice.
The Italian words used to express the nature of such a contract have been employed in almost every legal decision upon the subject, and certainly in every elementary work, are tacitly admitted thereby to embody its essence. Their proper original meaning ought, therefore, to throw some light upon its nature. Mr. Bell, in his Commentaries, states it to mean a liability like that upon a loan of money by the principal to the factor. This meaning is substantially adopted in all elementary works, (5 Com. Dig., [E.,] 55; 1 Com. on Cont., 253; 2 Kent Com., 487, [1st ed.;] Paley on Agency, 41; 3 Chit. Com. L., 194, 220, 221; 1 Livermore, 409;.) and in all decisions in England down to that of Mom's v. Cleasby, (4 Maule & Sel., 566, 574, 575.) In Grove v. Dubois, (1 D. & E., 115,) Lord Mass-field stated it to be an absolute engagement to the principal from the broker; that it made him liable in the first instance,.and that there was no occasion for the principal to communicate with the parties contracting with the *148 .¿broker in the first place, though he might resort to them .as collateral security; and Justice Bulles, remarked that he had never heard the inquiry made if there had been a demand. Justice Cowes, in Wolff v. Koppel, (5 Hill, 459,) understood Lord Mansfield, in such case, as considering the factor to be the principal debtor and the purchasers as mere accessorial. Lord Ellenborough, in Wienholt v. Roberts, (2 Camp., 587,) considered the del credere broker as the owner of the policy. Chambre, J., held the same doctrine in Houghton v. Matthews, (3 Bos. & Pul., 489.) Chitty, in his Commercial Law, (194, 220, 3d vol.,) states that the factor may be sued for goods sold as purchaser, and such seems to be the view of Parker, J., in Swan v. Nesmith, (7 Pick., 220.) In this State, in the case of Leverick v. Meigs, (1 Cow., 663,) Justice Woodworth substantially recognizes the same doctrine when • he declares the factor to be bound to pay the price at all events, although he seems to have been perplexed to reconcile it with that laid down in Morris v. Cleasby, (ubi sup.,) and some subsequent English cases. In the case of Wolff v. Koppel, (5 Hill, 459; S.. C., 2 Den., 371,) where the question seems to have fairly arisen in this State, out of the effect of the statute of frauds on such a contract, it has been set at rest. The proposition is fairly met, both in the prevailing and dissenting opinions in that case, in the Court of Errors; that if the contract of the factor was merely as surety for the payment by another of his debt, it must be in writing; and it was held that it need not be so, because it was an original undertaking. Justice Co wen, in his opinion in the Supreme Court, in the same case, states that “in substance the factor prefers, instead of paying cash, to “contract a debt, or duty, which obliges him to see the “money paid; the debt or duty is his own for an adequate ■“consideration, contingent on failing to secure it from '“ another.” Senator Porter, in the prevailing opinion of the Court of Appeals, declares “the understanding of the commercial community to be universal that the agree- ment between the principal and factor is original and *149 “absolute, to pay the price of the sales, deducting commis- ‘ ‘ sions, at the time the credit expired; a contrary rule would “require the principal to exhaust his remedy against the “purchaser, to determine Ms insolvency, before he could “charge the security.” The strong vote in the Court of Errors for affirmance of the judgment in the Court below, shows the universality of the belief in such understanding, the Senator delivering the dissenting opinion having only secured one additional dissentient. In that case, the case of Morris v. Cleasby, (ubi sup.,) and subsequent English cases of Hornby v. Lacy, (6 Maule & Sel., 166,) Peele v. Northcote, (1 B. Moore, 178; S. C., 7. Taunt., 478,) and Gall v. Comber, (1 B. Moore, 279,) are commented on, and, so far as they are antagonistical to the conclusions arrived at, are rejected as authority. The principle may, therefore, be considered as settled in this State at least.
The case of Halden v. Crafts, (4 E. D. Smith, 490,) in a Court of coordinate jurisdiction, decided by Justice Woodruff, now a member of this Court, has been cited as adverse to the conclusions already arrived at, but I think, on examination, the conflict will be found only apparent. It will be found that in that case, although the defendant was to receive a del credere commission, and it was material to determine whether his liability accrued-without a demand, no step was had on the part of the commission, and the whole case turned upon the defendant’s liability as a foreign factor,, and not as principal in an undertaking. The reporter in that case evidently so-understood it, for no mention is made in the head-note of the existence of the del crediere contract. The learned Judge, in his opinion, cites the- cases of Ferris v. Paris, (10 J. R., 285,) Cooley v. Betts,. (24 Wend., 203,) Lillie v. Hoyt, (5 Hill, 395,) Hays v. Stone, (7 Hill, 128,) Baird v. Walker, (12 Barb., 300,) as authorities for the principle laid down by Mm, in none of which was the commission del credere. He also takes notice of the case of Leverick v. Meigs, (1 Cow., 646,) not cited by either counsel in the *150 case before Mm, and quotes the words of it, that the del credere factor, “ is held to an unqualified undertaking that “ the purchaser of the goods shall pay for the goods according to the terms of sale,” the sole question in that case bemg whether the factor was responsible for bills remitted by Mm as proceeds of negotiable paper taken by him on the sales. The ease of Heubach v. Mollmann, (2 Duer, 252,) was also referred to as showing a factor’s duty in reference to proceeds received by him. Ho allusion is Made to the fact that a del credere factor becomes a principal in case the purchasers do not pay, nor is it contended that by any fiction of law the money due from him as a debtor is to be considered as if it were actually paid by the purchasers into his hands. Besides this, the case of Wolff v. Koppel, although decided by the highest Court in the State, was not cited or referred to by either the counsel or the Court, either to impugn its authority or disprove its applicability to the case in hand; that case clearly makes the liability of the factor an undertaking to pay, absolutely, in case the purchaser did not, and not merely a promise to remit, according to instructions, or pay on demand. Unless the liability of the defendant in Halden v. Crafts was, therefore, solely as factor, Wolff v. Koppel would have been conclusive authority in his favor. It will be found, however, that it does not appear, by the statement of facts in the former case, whether the defendant had or had not been paid by the purchasers, such omission being a condition precedent to Ms personal responsibility, the onus of proving which probably lay on the plaintiff, if he sought to recover without a demand. It may have been conceded that the defendant had received such proceeds, or the question may not have been raised as to the different form of his liability in case he had not; the question was discussed as though the liability was as factor having funds in Ms hands, not as an original promisor for not having received them. I apprehend, therefore, that unless the case of Salden v. ■Crafts is to be considered as intended to overrule Wolff *151 v. Koppel, it is no authority against any of the propositions hereinbefore laid down.
The responsibility of ordinary factors for funds received by them may be limited to a liability only after demand or instructions to remit; this, however, will not affect the liability of one who undertakes to pay a debt if another does not. A del credere factor may, as agent, receive the money from the purchasers, and such receipt as agent will discharge his own liability on paying the amount himself. But in an action by him, against purchasers for the price of the goods, he could collect interest on such amount when due, which ought to belong to his principal; his contract for the commission allowed him is to see that his principal receives the price due him, without diminution; in fact, to indemnify him against loss by the sales; and if so, there is no reason why the factor should not pay that interest, for which the purchaser is liable, to the same extent and in the same manner as the latter, which is without any demand.
Upon these principles, if the answer alleges as a fact the contract to have been to pay on demand, the defendants were liable, upon the state of facts appearing in the pleadings and affidavits, to pay interest upon the amount of the sales made by them, from the time when the credit on them expired. The complaint does not, in fact, state the time when the defendants undertook to pay the proceeds of the sales; although it alleges that they became due to the plaintiffs at the specified date which is the average of the credits, and that the defendants owed them at that time. Of course the liability of the defendants was solely founded upon their agreement, which may have been either in terms special, or subject to a custom as to the time of payment, and the latter allegations may be considered as only conclusions of law. Even the answer itself is somewhat ambiguous as to the terms of the contract, which it does not set out, although it alleges that by them the proceeds of the sales did not become due at the average date, but on demand, after the expiration of their credit, which *152 also becomes rather an allegation of their legal interpretation than their lánguage.
Enough, however, appears on this record to authorize this Court to consider the complaint as amended, if necessary, so as to conform to the allegations of the answer, if true, or the proof by affidavits, if not, even without any notice of motion to amend, (Bate v. Graham, 1 Kern., 237; Clark v. Dales, 20 Barb., 42,) as the appeal is from the judgment; and the fact that it is by default cannot make any difference. But, in fact, the variance between the contract set out in the complaint and that appearing by the evidence, is one that might be disregarded, as it could not prejudice the defendants, (Code, § 169,) and there is no proof that they were misled. (Catlin v. Gunter, 1 Kern., 368.) The variances overlooked in Carter v. Hope, in the Supreme Court, (10 Barb., 180,) Trowbridge v. Didier, (4 Duer, 448,) Newstadt v. Adams, (5 Duer, 43,) Hart v. Hudson, (6 Duer, 294,) Punchase v. Mattison, (6 Id., 587,) and Rogers v. Verona, (1 Bosw., 4Í7,) in this Court, and McComber v. Granite Ins. Co., (15 N. Y, R., 495,) in the Court of Appeals, were all greater than that in this case. Mistakes of persons, periods and places, and the substitution of a joint for a several, and a conditional for an absolute contract, or an excuse for the omission of an act instead of the act itself, and vice versa, were held immaterial in those cases. A variance in the mere absolute time of payment of money, where no demand is necessary, may be considered so immaterial as to have entitled the Court to have directed the fact to be found according to the proof. (Code, § 170.) The same test is, of course,- to be applied to a sham answer, where the only question is' whether there is anything to be tried if the case should be allowed to go to a Jury. (The People v. McCumber, 15 How., 186.)
It is a serious question in this case, however, whether the order complained of, could be reviewed on this appeal not made directly from it ;■ that is, whether it involves the merits, as well as affects the judgment. (Code, § 329.) In Whitney v. Waterman, (4 How., 313,) and Otis v. Ross, *153 (8 Id., 195,) it was conceded that if the parts of an answer stricken out by an order, did not affect the defendant’s rights, no appeal lay from, it directly. If the variance between the contract set out in the complaint and that established was not material, and the plaintiffs had a right to the same judgment for the same sum in both cases, to allow the answer to stand, merely to try the question of the precise form of the contract, would be a mockery of justice. But the evidence, assuming the allegations of both the complaint and answer, as to the form of the contract, to be as claimed by the defendants, establishes one not essentially varying from that set out in the complaint. It does not clearly appear by the evidence that the account annexed to that pleading was that one which was rendered when the acceptances were sent, although it does appear that it came from the defendant; in that it is admitted that the proceeds of the sales therein set out were payable on the 9th to the 12th of March, and there is no attempt to explain away such admission. If that account were the one so inclosed, it does not appear by the letter sent that it was only admitted upon condition, as claimed by the defendants, that the glaintiffs took the accompanying acceptances in payment. The plaintiffs’ letter asked for money before it was due, and of course, as a favor; the reply to it first speaks of inclosing the accounts, probably to show that no money was due, and then offers the acceptances as the best thing they could do, adding that the plaintiffs’ bank must discount them for them, thereby treating them rather as a means of assisting the plaintiffs to get what they desired, than as a mode of discharging their own obligation. The burden of the proof of establishing clearly the acceptance of a negotiable instrument in such case, as payment, lay with the defendants, (Noel v. Murray, 3 Kern., 168,) and they did not succeed in that. The adoption of the accounts and the receipt of the acceptances in payment, if intended to be, were not so inseparably connected by such reply as to make the rejection or acceptance of either dependent on the other, and there is *154 no other evidence of the terms of giving such acceptances.
Moreover, the defendants were liable upon such acceptances in any event; the representatives of their deceased partner were alone interested in determining whether they were accepted in payment of any prior undertaking. Ho judgment in this case could affect or avail such representatives in any way, unless by way of election by the plaintiffs. I do not see why, as regarded the defendants, the plaintiffs could not proceed upon the original contract, surrendering the acceptances to be canceled on the trial. (Nellis v. Bradley, 1 Sandf. S. C. R., 560; Thurston v. Blanchard, 22 Pick., 18; Nichols v. Michael, 23 N. Y., 264.)
The judgment, therefore, must be affirmed with costs.