## STATE *vs.* HARRY A. McAVOY.

### JULY 3, 1917.

PRESENT:  Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

*(1)  Criminal Law.  Embezzlement.  Evidence.*

On an indictment for embezzlement, where it appeared that defendant had been instructed, upon commencing his duties for his employer, to get from his predecessor, as agent, instructions as to the method of carrying on the business, and was instructed as to making and reporting sales and collections, testimony of the former agent as to such instructions was admissible, although such instructions were given while defendant was working under a contract which was subsequently modified in some respects and the embezzlement was alleged to have been committed after such modification, since the modifications did not relate to the reports, collections and deposits which defendant was instructed to make and under which instructions he undertook to act.

*(2)  Criminal Law.  Embezzlement.  Evidence.*

On an indictment for embezzlement, admission of an inventory of flour made by a bookkeeper of a warehouse company, and of slips of teamers showing deliveries, for the purpose of showing the falsity of a statement made by defendant, even if improper as evidence, would not constitute reversible error where there was other testimony establishing the falsity of defendant's statement, which defendant did not dispute.

*(3)  Criminal Law.  Embezzlement.  Evidence.*

On an indictment for embezzlement of money representing collections not accounted for and sales not reported, objection to evidence tending to show the number of barrels of flour on hand in a warehouse, on the ground that the issue was not the embezzlement of flour, is without merit, for the number of barrels disposed of and unaccounted for by defendant would form a basis for ascertaining the amount of money covered by the embezzlement.

*(4) Criminal Law. Embezzlement. Del Credere Factor. Contracts.*

In construing an agreement, the intention of the parties must prevail unless inconsistent with some rule of law, and such intention must be gathered, not from a portion of the contract, but from the whole taken together.

*(5) Criminal Law. Embezzlement. Del Credere Factor.*

Where goods were shipped direct by the employer to a warehouse, where they were held in the name of employer and subject to its orders, and defendant, after making a sale, was permitted by employer to withdraw from stock an amount to fill the order, and bill was rendered in name of employer, with notice stamped on it to pay the amount to defendant as agent of seller, and on receipt of payment defendant was obligated under his contract to deposit it in full in a bank to the credit of employer without any deduction for expenses or salary, defendant was the agent of employer and not a factor, and the fact that under certain conditions he was to be held responsible for interest on overdue accounts, and in some instances for payment of the principal, did not change his position.

*(6) Embezzlement. Del Credere Factor.*

A factor does not acquire the right to appropriate to his own use the money which he collects even if he has guaranteed the account.

*(7) Del Credere Factor. Embezzlement.*

A person who consigns his goods to a *del credere* agent for sale does not part with his title, but remains the owner until sold; and when the proceeds of the sale are received by the agent they belong specifically to the principal and do not become a part of the agent's assets, and if the agent converts such proceeds, he is guilty of embezzlement.

*(8) Tax Returns. Evidence.*

Under Pub. Laws, 1909, cap. 769, § 15, information as to returns made to the State Board of Tax Commissioners cannot be divulged except upon order of the court, and such inquiries arising in a trial should be ruled out unless it appears that the information sought is material to the party's case, and where such materiality does not appear the act of the trial court in excluding the evidence was proper.

INDICTMENT for embezzlement. Heard on exceptions of defendant and overruled.

VINCENT, J. In December, 1914, the grand jury for Providence County presented two indictments against the defendant for embezzlement. To each of these indictments the defendant pleaded not guilty and was released on bail.

The two cases were tried together in the Superior Court. The defendant moved to be discharged at the conclusion of the testimony offered on behalf of the State. The motion was denied. The jury returned a verdict of guilty as charged in each indictment, each being for the embezzlement of an amount exceeding $500. The defendant filed a motion for a new trial, upon the usual grounds, which was denied by the trial court.

The case is now before us upon the defendant's exceptions covering the denial of his motion for discharge; to various rulings during the trial as to the admissibility of evidence; to certain portions of the charge of the court and to the denial of the motion for a new trial.

The defendant's exceptions are fifty-eight in number but we are advised by his brief that he relies only upon exceptions numbered 1, 2. 3, 32, 33, 34, 36, 53, 54, 57, and 58.

The indictment No. 8269, now before us on exceptions No. 4948, charges the defendant, Harry A. McAvoy, on the 1st day of January, 1914, at Providence; "being then and there the clerk and agent of the Bay State Milling Company, a corporation, did then and there by virtue of his said employment have, receive and take into his possession, money to a large amount, to wit, to the amount of One Thousand Three Hundred and sixty-eight dollars and eighty-seven cents, and of the value of one thousand three hundred and sixty-eight dollars and eighty-seven cents, of the property and money of the said Bay State Milling Company, a corporation as aforesaid, the said Harry A. McAvoy's employer, and the said Harry A. McAvoy the said money then and there feloniously did embezzle and fraudulently convert to his own use, without the consent of the said Bay State Milling Company, a corporation as aforesaid, the said Harry A. McAvoy's said employer, whereby and by force of the

statute in such case made and provided, the said Harry A. McAvoy is deemed guilty of larceny," *etc.*

The indictment No. 8270 now before us on exceptions No. 4949, is identical with the one above referred to with the exception of the date of the embezzlement which is stated on July 1, 1914, and the amount embezzled as $2834.30.

The defendant, covering the periods of the alleged embezzlements, was in the employ of the Bay State Milling Company, a corporation created under the laws of·the State of Minnesota and having its principal office in the city of Boston, Massachusetts. All the dealings of the defendant were with this office. The defendant was hired by the president of the company, Bernard J. Rothwell, and his assistant Ernest C. Harris, and commenced work for said company in April or May, 1913. His duties were to sell flour in Providence and vicinity and to collect the proceeds of such sales. During his earlier employment by the milling company he performed these duties for a stated salary of $70 per month and an allowance for expenses, both of which were paid by the checks of the milling company.

Upon assuming his duties the defendant was instructed to conduct the business in the same manner in which it had been conducted by his predecessor, Fay G. Hicks. In compliance with such instructions, the defendant submitted himself to the tutelage of Hicks for a period of about a week receiving from him minute directions as to the method of conducting the business and being introduced by him to various customers.

The instructions given to the defendant by Hicks were that each sale was to be reported to the milling company by sending to its office in Boston a duplicate or carbon copy of the invoice slip on the day of the sale, and a weekly report including an account of the stock on hand at the warehouse and a list of the collections. The mill-

ing company furnished to the defendant a pad of invoice slips, numbered consecutively, there being four copies to each number distinguishable from each other by the color or character of the paper. The original or white slip was to be kept by the defendant; the blue slip to be sent to the customer; the slip of tissue paper was to be forwarded to the office of the milling company in Boston; and the pink slip was not required under the arrangement with the defendant. Printed blanks, for the weekly reports, were also furnished to the defendant by the milling company which were designed to show, when properly filled out, the number of barrels of flour received during the week; an itemized list of the number of barrels delivered to customers from the warehouse; the number of barrels remaining in the warehouse; and an itemized list of all amounts collected from customers.

As soon as the defendant collected the proceeds of sales, either in money or by check, he was to deposit the same in the Merchants National Bank in Providence in the name of the milling company and report the same by sending to the milling company a copy of the deposit slip.

On November 1, 1913, a further arrangement was made between the defendant and the milling company whereby the defendant should thereafter, instead of receiving a fixed salary, be paid a commission of thirty-five cents for every barrel of flour sold by him, he paying his own expenses, the expenses of storing and carting the flour in Providence, and the guaranteeing of all accounts. This arrangement does not appear to have modified, or to have been intended to modify, the previous instructions given to defendant as to reports, collections, and deposits. In carrying out this additional arrangement the defendant was paid sixteen dollars a week in advance on account of commissions. The balance due the defendant on account of commissions was paid to him from time to time by

check from the milling company and he was not permitted to deduct such commissions from his collections. Later, the milling company becoming dissatisfied with the defendant's dilatoriness in collecting the accounts, a further arrangement was made between the parties, taking effect in March, 1914, whereby the defendant was to be charged interest on all accounts which were not collected within forty-five days..

During the summer of 1914 there were some negotiations between the defendant and the milling company looking to some arrangement whereby the defendant should buy the flour from the milling company and sell it on his own account and on October 9, 1914, the defendant wrote to the milling company that by the next month he hoped to " buy the business outright." This arrangement was never completed and the defendant admitted at the trial that this letter was written merely for the purpose of gaining time.

The milling company shipped the flour in its own name to a warehouse in Providence. None of the flour was ever consigned or charged to the defendant and the defendant's name did not appear in the shipment. All the bills sent by the defendant to purchasers of flour were in the name of the milling company, a notice being stamped thereon requesting remittance to " Harry A. McAvoy, Agt." The defendant also in the transaction of the business used stationery which was headed " Bay State Milling Company." The defendant was given no authority to make prices, on his own account, and letters and bills were sent direct to delinquent customers by the milling company.

The defendant undertook and purported to conduct the business in accordance with these arrangements. He sent to the milling company duplicate invoice slips and copies of deposit slips and a weekly report in the form heretofore described.

The evidence shows that the defendant made sales and deliveries which he never reported to the milling company and that he made collections which he did not deposit in the Merchants National Bank or report to the milling company but appropriated the same to his own use.

There is evidence showing the methods resorted to by the defendant in concealing from the milling company that he was obtaining money which he did not report; that he omitted to report to the company certain collections which he had made on deliveries reported; that he omitted to report certain sales and deliveries; that he would deliver flour to two different customers under invoices of the same number and report but one of these deliveries to the company, sending the white slip to one customer and the blue slip of the same number to another customer instead of retaining either for himself; and on the tissue slip of the same number send to the company a report of only one of the sales.

The defendant admitted that in one instance he had intentionally concealed from the milling company one sale and collection amounting to $85, but he testified that his failure to report other collections, to the number of a dozen or more, was due to forgetfulness.

The defendant had been instructed to deposit all collections to the account of the milling company in the Merchants National Bank and send the milling company a copy of each deposit slip; and, according to the testimony of the officers of the milling company, the defendant had no authority to endorse any check made out to the order of the milling company or to deal with either money or checks received in payment of flour except to deposit the same to the account of the milling company in the Merchants National Bank.

The testimony shows, however, that several checks made out to the order of the milling company were de-

posited by the defendant to his own account in the In-
dustrial Trust Company of Providence, the defendant
indorsing them "Bay State Milling Company, Harry A.
McAvoy, Agent" and that the amounts represented by
such checks were never reported to the milling company
as collections.

In July, 1914, the milling company wrote to the ware-
house in Providence, in which the flour was stored, re-
questing an inventory of the flour of the milling company
then in its possession. The defendant, visiting the office
of the warehouse company and seeing the letter request-
ing an inventory, told the representatives of the ware-
house company that he would take care of that matter
and accordingly prepared an inventory on a sheet of
letter paper headed with the name of the warehouse com-
pany, which paper had in some unexplained manner come
into the defendant's possession. The inventory thus pre-
pared by the defendant was typewritten and without sig-
nature. There was nothing upon it to indicate that it was
not compiled by employees of the warehouse company.
The amounts given in this inventory corresponded with
those given by the defendant in his reports, but exceeded
by about three hundred barrels the amount of flour which
was actually in the hands of the warehouse company.

The defendant made some explanation of this matter
of the inventory to the effect that an employee of the
warehouse company asked him to make out the inventory
and that he copied the figures from his previous reports.
Although the milling company later wrote to the defend-
ant referring to this report as the report of the ware-
house company, the defendant did not advise the milling
company that such report had been made by himself.

There was also testimony that on November 14, 1914,
the milling company was notified by the Merchants Na-
tional Bank that its account was overdrawn. This turned
out to be due to the fact that the defendant had deposited

in that bank a check against his own account in the Industrial Trust Company which did not prove to be good. Mr. Harris of the milling company came to Providence and telephoned the defendant that he would like to see him at the Narragansett Hotel. Harris testifies that defendant stated to him over the telephone that he would be at the hotel in a few minutes. The defendant, however, went to New London, Connecticut. Harris, after waiting for a time, telephoned the defendant's father, who in turn telephoned the defendant at New London, suggesting to the defendant that he return to Providence and he accordingly came back the next day. The defendant, however, testifies that he told Harris over the telephone that he had made arrangements to go to the southern part of the State to see prospective customers and could not see him that day. On cross-examination the defendant admitted that he had never before solicited business in Westerly and that he could not remember the name of a single person upon whom he called. He said that he went to New London because there was no decent hotel in Westerly where he could spend the night. The defendant further admitted on cross-examination that he knew nothing whatever about the hotels at Westerly and had no reason whatever for being dissatisfied with them. Witnesses for the State testified that the defendant admitted, at the start, that he had gone to Connecticut because he was afraid to face Harris; that he had appropriated money collected to the extent of some $6,000 including about $2,000 of the sales which he had not reported to the milling company; that he had made out a false inventory on the letter paper of the warehouse company and that he had paid out most of the money which he had taken to make up for losses in speculating in wheat; that the defendant, without making any attempt to justify the taking of the money, told the representatives of the company that they could put him in jail if

they wanted to and when arrested by Inspector Maguire, he said he had been a fool to give up his ledger to the company. In October, 1914, in answer to some complaints of the milling company that he was behind in the collection of his accounts, the defendant wrote to the milling company that in a few weeks an estate in which he was interested would be settled and that he would then have the money to remit, but he admitted on cross-examination that this story was a falsehood and that there was no such estate.

The only exceptions pressed by the defendant, as stated in his brief, are those numbered 1, 2, 3, 32, 33, 34, 36, 53, 54, 57, and 58.

(1)    The defendant's exceptions 1, 2, and 3 relate to the admission of certain testimony of Fay G. Hicks. Hicks was the predecessor of the defendant as the Providence agent of the milling company. The defendant was told to get from Hicks instructions as to the method of carrying on the business. The defendant went to Hicks and Hicks spent the greater part of a week in giving him instructions as to making and reporting sales and collections and also taking him to interview customers. The defendant objected to the testimony of Hicks in reference to the instructions he gave to the defendant on the ground that such instructions were given in April, 1913; that the contract under which he was then employed by the milling company ended in November, 1913, previous to the embezzlement set forth in the indictment; and that the arrangements from November 1, 1913, to the conclusion of his dealings with that company were very different and it was immaterial what the arrangements were prior to 1914, the time laid in the indictment.

We do not think that the contract between the defendant and the milling company can be said to have ended in November, 1913. The contract was added to or modified in some respects at that time, but such additions or modifi-

cations did not relate to the reports, collections, and deposits which the defendant was instructed to make and under which instructions he undertook to act.

The modifications referred to related to the defendant's compensation, the guaranteeing of accounts, and to the payment of interest on accounts after the same had been overdue for a certain period. The duties of the defendant in the matter of reports, collections, and deposits were those given to him by Hicks, at the instance of the milling company, and we think that such testimony was properly admitted and that the defendant's exceptions 1, 2, and 3 must be overruled.

The defendant's exceptions 32, 33, and 34 relate to the same matter and may be considered together.

(2)  In July, 1914, the milling company wrote to the warehouse company for an inventory of the flour on hand. This inventory, as before stated, was made up by the defendant, typewritten upon the letter paper of the warehouse company, was without signature, and bore no indication that it emanated from the defendant. It was sent by the defendant to the milling company purporting to be a correct statement by the warehouse company of the amount of flour on hand.

The State, in its endeavor to show the falsity of this statement and that the amount of flour in the possession of the milling company was much less than that represented in the report, offered in evidence an inventory of the flour in the hands of the warehouse company on July 30, 1914, made up by the bookkeeper of that company. In making such inventory the bookkeeper started with the balance of flour as shown by the inventory of the month preceding, and deducted therefrom the deliveries during the month as reported to him by the teamers. These reports of the teamers were made, from time to time, upon slips used for that purpose which were filed in the office of the warehouse company. Some of these slips were

offered in evidence in verification of the inventory of the bookkeeper. Another employee of the warehouse company testified that he actually counted the stock of flour on hand and found that his figures corresponded with the figures of the inventory made by the bookkeeper. Besides this, Mr. Harris of the milling company counted the barrels of flour on hand in the warehouse and found a shortage of 575 barrels.

The defendant contends that the introduction of the slips referred to, showing deliveries of flour made by the teamers of the warehouse company, and the introduction of the inventory of flour made therefrom, by the bookkeeper of the warehouse company amounted to nothing more than the introduction of hearsay evidence, the admission of which was error. The apparent purpose of the testimony was to show that the defendant had deceived the milling company by conveying to that company a false report of the flour on hand. If we take the view that the admission of such testimony was erroneous it would not constitute reversible error in view of the fact that there was other testimony establishing the falsity of the defendant's inventory which he did not dispute. The defendant's exceptions 32 and 33 must be overruled.

(3) The defendant's exception 34 is to the ruling of the court allowing the bookkeeper of the warehouse to testify as to the number of whole barrels of flour on hand as shown by the report of the defendant made to the milling company. The defendant objected to the question on the ground that the issue was not the embezzlement of flour. We see no merit in this exception. The number of barrels disposed of and unaccounted for by the defendant would naturally form a basis for ascertaining the amount of money covered by the embezzlement. The defendant's exception 34 is overruled.

At the conclusion of the testimony for the State the defendant moved that he be discharged and his exception

36 is to the refusal of the trial court to grant that motion. The basis of this motion was that under the facts as presented the defendant was a *del credere* factor and that the relations between himself and the milling company (4) were simply those of debtor and creditor. Passing over the contention of the State that the disposition of such a motion is within the discretion of the court and is not the subject of exception, two questions present themselves for consideration: (1) Was the relation of the defendant with the milling company that of *del credere* factor and (2) if such relation existed could the defendant be found guilty of embezzlement under the indictments brought against him?

In determining the first of these questions, we must consider the agreement between the parties and apply thereto the familiar rules of construction, all of which are subordinate to the leading principle, that the intention of the parties must prevail unless inconsistent with some rule of law. And such intention must be gathered not from a portion or portions of the contract, but from the whole taken together. 11 R. C. L. 755; 1 Clark & Skyles on Agency, 24.

(5)      In the case at bar the flour was never consigned by the milling company to the defendant. It was shipped direct to the warehouse in Providence where it was held as the property of and in the name of the milling company and was at all times subject to its orders. The defendant, after making a sale of flour, was permitted by the milling company to withdraw from its stock in the warehouse a sufficient number of barrels to fill the order. A bill was rendered to the purchaser in the name of the milling company, there being stamped upon such bill a notice to pay the amount due thereon to the defendant as its agent. Upon the receipt of the money the defendant was obligated, under his contract, to deposit it in full in the Merchants National Bank to the credit of the milling com-

pany without any deduction therefrom for salary, commission or expenses.

We cannot find any intent of the parties, either expressed by the contract itself or by the methods in which their respective duties under it were discharged, that would warrant us in drawing the conclusion that the defendant was acting otherwise than as the agent of the milling company.

The defendant seems to place much reliance upon the fact that under certain conditions he was to be held responsible to the milling company for interest upon accounts overdue for a certain length of time and in some instances for the payment of the principal sum.

The reason for this arrangement is quite apparent from the record. The milling company had expressed its dissatisfaction at the seeming indifference of the defendant regarding the prompt collection of the accounts due, and his want of care in the selection of responsible customers. The arrangement was doubtless made for the purpose of stimulating the defendant to look more closely after the collections and to be more careful about making sales to irresponsible parties. It could hardly be inferred that the milling company was seeking to secure itself against loss through the-liability of the defendant who does not appear to have been a person of any financial standing.

If we assume that the defendant was a factor we do not see how it could help him in the present case. The defendant does not deny that he was at all times an agent of the company nor does he claim that he had any right to take the money which he appropriated to his own use.
(6) A factor or any other agent does not acquire the right to keep and appropriate to his own use the money which he collects even if he has guaranteed the account. The statute, General Laws, 1909, Chapter 345, Section 16, is explicit and provides that, " Every officer, agent, clerk, or servant . . . who shall embezzle or fraudulently

convert . . . any money or other property which
shall have come into his possession or shall be under his
care or charge by virtue of such employment . . .
shall be deemed guilty of larceny." This statute has
been interpreted by this court in *State* v. *Taberner,* 14 R.
I. 272, 276, in which case the court said: " The obvious
meaning is that any agent who has money in his posses-
sion, which has come into his possession by virtue of his
agency, is punishable under the statute if he embezzles
or fraudulently converts it."

The defendant argues that he was acting under a *del
credere* commission; that the relations between himself
and the milling company were those of debtor and cred-
itor; and therefore he cannot be prosecuted for embezzle-
ment. As this court said in *Balderston* v. *National Rub-
be Co.,* 18 R. I. 338, 347: " The effect of the commission
is not to extinguish the relation between principal and
factor, but applies solely to a guaranty that the pur-
chaser shall pay." In 9 Am. & Eng. Encyc. (2d Ed.) 183,
the law on this subject seems to be well summarized as
follows: " The fact that an agent or factor is acting
under a *del credere* commission does not affect the ordi-
nary relations existing between him and his principal.
Save for the additional security afforded the principal,
their reciprocal rights, duties and liabilities remain the
same. . . . A person who consigns his goods to a *del
credere* agent for sale does not part with his title. He
remains the owner of such goods until sold; and when the
proceeds of the sale are received by the agent or his as-
signees, they belong specifically to the principal, and do
not become a part of the agent's assets, the principal
being an ordinary creditor for the amount."

In *Wallace* v. *Castle,* 14 Hun 106, it was held that the
consignment of goods to a factor acting under a *del
credere* commission does not necessarily destroy the
fiduciary relation existing between himself and the con-

signor and that when he is in fact paid by the debtor, the money so received is the money of the consignor and not of the factor, and for a conversion thereof the latter is liable to arrest. The court in its opinion said: "The defendant was a factor and although entitled to *del credere* commission his character was not changed. His responsibility and his compensation were enlarged, but that was in fact and in law the only change accomplished by the agreement *del credere.* He guaranteed the payment of the sum for which the goods were sold, but his liability did not accrue until the purchaser failed to pay. In this case the payment was made and the contract of liability therefore occurring through the *del credere* commission was not called into existence. The relation of factor continued with all its obligations and burdens. The money received was the plaintiff's money and not the defendant's. It came from the plaintiff's debtor and should have been paid to the plaintiff as his fund. . . ."

This case goes further than the exigencies of the present controversy demand because the consignment was there made to the factor while in the case at bar the consignment was made to the warehouse in the name of the milling company. See also *Commonwealth* v. *Smith,* 129 Mass. 104; *Audenried* v. *Betteley,* 8 Allen (Mass.) 302, 307; *Moore* v. *Hillabrand,* 37 Hun (N. Y.) 491; *Stanwood* v. *Sage,* 22 Cal. 516; *Thompson* v. *Perkins,* 3 Mason (U. S. C. C.) 232.

The case of *Leverick* v. *Meigs,* 1 Cow. 645, from which the defendant appears to quote in his brief, although the apparent quotation is not in the exact language of the opinion, seems to us to sustain the principle that while a *del credere* agreement may make the agent liable, in the event of the purchaser's default, it will not operate to deprive the principal of his right to insist upon the performance of the agent's duty in other respects. The court in its opinion said: "The only difference between a factor, acting under a *del credere* commission, or with-

out one, is as to the sales made. In the former case he is absolutely liable, and may correctly be said to become the debtor of his principal; but it is not strictly correct to say he is placed in the same situation, as if he had become the purchaser himself; for, as we have seen, the principal, notwithstanding this liability, may exercise a control, not allowable between creditor and debtor, when the principal appears, the right of the factor to receive payment ceases. This shows that the effect of the commission is not to extinguish the relation between principal and factor, but applies solely to a guaranty that the purchaser shall pay.''

The case of *Gindre* v. *Kean,* 7 Misc. (N. Y.) 582, which the defendant cites, seems to us to be in line with the authorities to which we have already referred. In the course of its opinion the court, speaking of the defendant, said: '' that he was answerable for the purchase price under his *del credere* agreement in the event of the purchaser's default in payment did not operate to deprive his principals of the right to insist upon performance of his duty as factor.''

We think that defendant's exception 36 must be overruled.

The defendant's exception 53 does not seem to us to possess sufficient merit to warrant particular discussion.

The defendant's exception 54 was taken to the ruling of the trial court sustaining an objection to the introduction of any correspondence received by the State Board (8) of Tax Commissioners. The objection came from the attorney general at the request of the tax commissioners and was based upon the ground that all information in possession of such commission was confidential and that its disclosure would impede its workings. The purpose of the particular question was to ascertain if there had been any correspondence between the Bay State Milling Company and the tax commissioners as to whether said company was doing business in Rhode Island.

Under Section 15, Chapter 769 of the Public Laws of 1912, this information could not be divulged except upon the order of the court. It would be the duty of the trial court, in the exercise of its discretion, to rule out the question unless it should appear that the information sought was material to the defendant's case. The materiality of the testimony was not apparent to the trial court and it is not apparent to us. We think it was properly excluded. So far as appears it could be of no assistance to the jury in determining whether or not the defendant was guilty of embezzling the money of the milling company.

The defendant's exception 57 is as follows: "Also will Your Honor note my exception to the charge of the Court in which the Court stated that the ownership of the flour was controlling as to his rights to the proceeds."

Supposing the exception to be a substantial statement of what the court said in its charge, it could hardly be claimed to be an erroneous statement of the law applicable to the case. If the flour was the property of the defendant he could not be guilty of embezzlement. If, on the other hand, the flour was the property of the milling company and the defendant appropriated the proceeds to his own purposes when, under his agreement, he was bound to make deposit thereof in the Merchants National Bank to the account of the milling company, then he would be guilty of embezzlement and in that view of the case the ownership of the flour might reasonably be said to be controlling. An examination of the charge of the court satisfies us that the instructions given amount to a correct statement of the law. For instance, the court said: "So you see, gentlemen, that it is necessary, in order to establish the crime charged against the defendant here of embezzlement, that he should either have been an officer, an agent or clerk or servant, or a person to whom the money was entrusted, of the Bay Milling Company. That is the reason that so much stress was laid

upon the question as to whether or not he was the owner of this business and carrying on business on his own responsibility, owning this property, or whether or not he was the agent of the Bay State Milling Company, and being their agent, having this property given into his hands as their agent, or for a specific purpose, embezzled their money. If it was his own money, he could not embezzle his own money. It must have been the money that came into his hands as the agent, etc., of the Bay State Milling Company. What the evidence is upon that point you have heard, both upon his side and upon the side of the prosecution, and you will determine for yourselves what the facts are." These instructions were substantially repeated by the court in another portion of the charge. We do not find any error in the charge and defendant's exception 57 must be overruled.

The remaining exception 58 is to the denial of the defendant's motion for a new trial. The jury has found the defendant guilty and the trial justice who saw, heard and observed the witnesses has denied the motion for a new trial and has found that " the evidence fully warrants the finding of the jury that the defendant is guilty of the crime of embezzlement as charged in the indictment." An examination of the whole record convinces us that the conclusion of the trial court in denying the motion for a new trial was correct. A detailed discussion of this exception would be largely and substantially a repetition of what has already been stated and would therefore be unnecessary. Exception 58 must be overruled.

All of the defendant's exceptions are overruled and the case is remitted to the Superior Court for sentence.

*Herbert A. Rice,* attorney general, for State.
*Claude R. Branch,* of counsel.
*Fitzgerald & Higgins, Peter M. O'Reilly,* for defendant.